No. 100,864

STATE OF KANSAS, *Appellee*, v. ANDREW JOHNSON, *Appellant*.

(301 P.3d 287)

Opinion filed May 3, 2013.

*Carl F.A. Maughan*, of Maughan & Maughan LC, of Wichita, argued the cause and was on the briefs for appellant.

*Lesley A. Isherwood*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Andrew Johnson seeks review of the Court of Appeals decision that affirmed Johnson's jury trial conviction for misdemeanor driving under the influence (DUI) with a blood-alcohol concentration of .08 or higher. The DUI charge resulted from a sobriety checkpoint at which Johnson failed field sobriety tests and the ensuing Intoxilyzer 5000 breath test. Johnson first complains that his case should have been dismissed because the arresting deputy sheriff destroyed his field notes and failed to preserve the breath sample from the Intoxilyzer 5000. Next, he contends that, because the check lane was established in advance, the State was required to have a court-issued search warrant to conduct the Intoxilyzer 5000 breath test. He further claims that the State failed to show that the Intoxilyzer 5000 complied with Kansas Department of Health and Environment (KDHE) regulations. Finally, he argues that the court violated his constitutional right to confront witnesses by admitting KDHE certification evidence without the testimony of the person certifying those records. Finding no reversible error, we affirm.

## FACTUAL AND PROCEDURAL OVERVIEW

In July 2007, Deputy Kenneth Kooser of the Sedgwick County Sheriff's Department was working a DUI sobriety checkpoint in Wichita, Kansas. When Johnson pulled into the check lane, the deputy witnessed Johnson's vehicle almost strike another vehicle. Upon making contact with Johnson, the deputy observed that Johnson's eyes were bloodshot and watery; his speech was not clear; and he was emitting a strong odor of alcohol. Johnson admitted that he had consumed two beers that evening. Deputy Kooser then requested Johnson to step out of his vehicle to perform some field sobriety tests. Johnson swayed from side to side as he exited his vehicle to accompany Deputy Kooser to the area set up for the

field sobriety tests. Johnson exhibited clues of intoxication on both the "walk and turn" and "one leg stand" field sobriety tests.

Based upon his observations, the deputy proceeded to give Johnson the written and oral notices from the DC-70 implied consent advisory. One of the notices advised that after the completion of a breath test, Johnson would have the right to consult with an attorney and to secure additional testing. Deputy Kooser then requested and Johnson consented to an Intoxilyzer 5000 breath test. The .084 result led to a misdemeanor charge of DUI with a blood-alcohol concentration of .08 or higher and an alternative charge of DUI to a degree that he could not safely operate a motor vehicle. See K.S.A. 2007 Supp. 8-1567(a)(2) and (a)(3).

Prior to trial, Johnson filed a motion to suppress the evidence obtained from a warrantless search, a motion to dismiss based upon the failure to save his Intoxilyzer 5000 breath sample, and a motion in limine to exclude evidence based upon an improper calibration of the Intoxilyzer 5000 machine. Following an evidentiary hearing, the district court denied the motions.

During the pretrial motion hearing, Deputy Kooser testified that he had destroyed his field notes from the checkpoint investigation, prompting Johnson to file a second motion to dismiss based on that destruction of the field notes. When the district court ultimately denied the motion, it concluded that there was no evidence of a department policy dealing with the maintenance of field notes of which the deputy was aware; the destruction of the field notes was for benign purposes; that Deputy Kooser fully and accurately transferred his shorthand field notes into a more understandable account in the alcohol influence report or narrative report; that all reports had been made available to the prosecution and the defense; and that there was no evidence to support a finding that Deputy Kooser destroyed the field notes with knowledge that they might be helpful to or potentially exculpatory for the defense.

During the trial, Johnson objected to the admission of the packet of documents establishing the certification of the Intoxilyzer 5000, including Deputy Kooser's certification to operate the Intoxilyzer 5000 and the machine's maintenance and calibration records. Johnson argued that the evidence constituted inadmissible hearsay in

that it was testimonial evidence that violated Johnson's right to cross-examine and confront witnesses. The district court overruled the objection to the records that certified the Intoxilyzer 5000 as being in working order based upon *State v. Dukes*, 38 Kan. App. 2d 958, 962, 174 P.3d 914 (2008), *aff'd* 290 Kan. 485, 231 P.3d 558 (2010). In addition, the district court found that the calibration certificates were admissible pursuant to the hearsay exception in K.S.A. 2007 Supp. 60-460(m). Finally, the district court admitted Deputy Koosler's certification to operate the Intoxilyzer 5000 subject to the deputy's anticipated testimony in the trial.

The jury found Johnson guilty of driving with a blood-alcohol concentration higher than .08 but acquitted him of the alternative charge of driving under the influence of alcohol to the extent that he was incapable of safely operating a motor vehicle. Johnson was sentenced to 6 months in jail but ordered to serve 48 hours of confinement and 1 year of probation.

Johnson appealed to the Court of Appeals, which affirmed his conviction. *State v. Johnson*, 43 Kan. App. 2d 815, 233 P.3d 290 (2010). The Court of Appeals concluded that there was no evidence of bad faith in the destruction of the field notes or breath sample and, accordingly, no due process violation. 43 Kan. App. 2d at 820. The panel also determined that the deputy had probable cause to arrest Johnson and a warrant was unnecessary to conduct the breath test. 43 Kan. App. 2d at 824. A challenge to the officer's compliance with testing protocols was deemed an attack on the weight of the evidence. Finally, the Court of Appeals rejected Johnson's argument that the admission of the Intoxilyzer 5000 certification records violated his constitutional right of confrontation. 43 Kan. App. 2d at 825-26. We granted Johnson's petition for review.

## DESTRUCTION OR PRESERVATION OF EVIDENCE

Johnson first complains that the district court should have dismissed his prosecution as a sanction for the deputy's destruction of his field notes and the failure to utilize the device on the Intoxilyzer 5000 that permits the trapping and storing of the breath sample for subsequent testing. Johnson argues the destruction of

field notes and the failure to preserve breath sample complaints separately, albeit some of his arguments overlap.

*Standard of Review*

The standard of review for denial of a motion to dismiss depends on the ground on which dismissal was sought. *State v. Garcia*, 282 Kan. 252, 259, 144 P.3d 684 (2006).

We review a trial court's discovery order, including orders granting or refusing to grant sanctions, for an abuse of discretion. See *Richards v. Bryan*, 19 Kan. App. 2d 950, 967, 879 P.2d 638 (1994). An abuse of discretion occurs where judicial action (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).

The interpretation of a statute is a question of law subject to unlimited review. *State v. White*, 279 Kan. 326, 332, 109 P.3d 1199 (2005).

The determination of the question of bad faith with respect to a claimed due process violation turns on the "officers' knowledge of the exculpatory value of the evidence at the time it was lost or destroyed," and bad faith is a question of fact. *State v. LaMae*, 268 Kan. 544, 551, 998 P.2d 106 (2000). This court reviews the district court's findings of fact to determine if they are supported by substantial competent evidence and whether the findings are sufficient to support the district court's conclusions of law. *State v. Finley*, 273 Kan. 237, 241, 42 P.3d 723 (2002).

*Analysis*

We first address Johnson's complaint about the destruction of field notes, which he approaches from two angles. In the first approach, he asserts that he was entitled to have the field notes under K.S.A. 22-3213 and that the district court should have sanctioned the State for its failure to produce the evidence by dismissing the case. We begin by looking at the actual provisions of K.S.A. 22-3213, which provide, in relevant part:

"(2) After a witness called by the state has testified on direct examination, the court shall, on motion of the defendant, order the prosecution to produce any statement (as hereinafter defined) of the witness in the possession of the prose-

cution which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

. . . .

"(4) The term 'statement,' as used in subsections (2) and (3) of this section in relation to any witness called by the prosecution means—

(a) a written statement made by said witness and signed or otherwise adopted or approved by him; or

(b) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement."

A plain reading of these provisions gives rise to a number of questions, beginning with whether the deputy's shorthand field notes are a "statement" contemplated by the statute. *Cf. State v. Eubanks*, 2 Kan. App. 2d 262, 263, 577 P.2d 1208 (original field notes discoverable under K.S.A. 22-3213[4][a] [Weeks], if available), *rev. denied* 225 Kan. 846 (1978); but see *United States v. Osbourn*, No. 05-M-9303-M-1, 2006 WL 707731, at *2 (D. Kan. 2006) (unpublished opinion) (*Eubanks* "has been pre-empted by the standards set forth in *Youngblood* and *Trombetta*."). Likewise, the record does not appear to contain a "motion of the defendant" as required by statute. See K.S.A. 22-3213(2). Moreover, the statute, on its face, merely provides a mechanism for the defendant to obtain an order of production of statements in the possession of the State, *i.e.*, a discovery order. Applying the statute in the context of law enforcement's handling of field notes during the investigation stretches the statute beyond its apparent purpose.

Nevertheless, even if we would find that K.S.A. 22-3213 provides the basis for a district court to dismiss a criminal prosecution as a sanction for the destruction of field notes by an investigating police officer, such a dismissal is not required as a matter of law. The draconian remedy of dismissal for a discovery violation is obviously a matter of judicial discretion. See *Canaan v. Bartee*, 272 Kan. 720, Syl. ¶ 3, 35 P.3d 841 (2001) (where noncompliance with discovery order is due to inability rather than bad faith, severe sanction of dismissal or default probably inappropriate). Here, that discretion was not abused by declining to dismiss because, as the district court

found, Deputy Kooser fully and accurately transcribed his short-hand field notes into a more understandable account in the formal reports and provided Johnson with a copy of all of those reports.

Moreover, Johnson was obviously present during the field investigation and should know whether the reports contain an inaccuracy or an omission. Yet, pointedly, he does not contend that the formalized reports inaccurately reflect what transpired during the checkpoint investigation. Rather, he apparently wants to fish for some inconsistencies between the notes and the report, albeit he does not explain any basis for believing such differences actually exist or why such minor discrepancies would create any prejudice to the defense, other than precluding a challenge to the deputy's secretarial skills. Consequently, without a showing of any appreciable prejudice from his inability to possess the shorthand notes from which the final reports were prepared, Johnson has failed to establish any abuse of discretion in the trial court's refusal to dismiss the case.

Johnson's second approach is to declare the destruction of field notes a violation of his due process rights. He attempts to base the due process violation upon the well-settled proposition, emanating from *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), that the State must disclose exculpatory evidence to the defendant. See also *State v. Smith*, 245 Kan. 381, 384, 781 P.2d 666 (1989) (prosecutor under positive duty, independent of court order, to disclose exculpatory evidence). From that standpoint, Johnson argues that the good faith of the law enforcement officer in destroying material exculpatory evidence is irrelevant.

But with respect to the due process which is guaranteed by the Fourteenth Amendment to the United States Constitution, the United States Supreme Court has drawn a distinction between evidence that is material and exculpatory on the one hand, and on the other hand evidence which might conceivably acquire significance, such as evidentiary material "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Arizona v. Youngblood*, 488 U.S. 51, 57, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988). When dealing with the State's failure to preserve the latter type—*potentially* use-

ful evidence—the defendant must show that the State acted in bad faith in order to establish a due process violation. See *Youngblood*, 488 U.S. at 58; *Taylor v. State*, 251 Kan. 272, 278, 834 P.2d 1325 (1992), *disapproved on other grounds by State v. Rice*, 261 Kan. 567, 932 P.2d 981 (1997). The *Youngblood* Court reasoned that

"requiring a defendant to show bad faith on the part of the police both limits the extent of the police's obligation to preserve evidence to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, i.e., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." 488 U.S. at 58.

This court has likewise held that unless a defendant can show bad faith on the part of the police, the failure to preserve potentially useful evidence does not constitute a denial of due process. See *State v. Torres*, 280 Kan. 309, 321, 121 P.3d 429 (2005). The determination of bad faith turns on the "officers' knowledge of the exculpatory value of the evidence at the time it was lost or destroyed," and the question of bad faith is a question of fact. *LaMae*, 268 Kan. at 551.

Johnson also tries to read our decision in *State v. Wilkins*, 220 Kan. 735, 556 P.2d 424 (1976), as creating a rule that a law enforcement agency's failure to adopt and enforce policies with regard to the preservation of field notes is prima facie evidence of bad faith. He reads far too much into *Wilkins'* holding. That case involved signed witness statements that had simply been lost by the law enforcement officers, and the opinion urged investigative agencies to adopt and enforce rules and regulations "to preserve evidence during the entire process of investigation." 220 Kan. at 741. *Wilkins* did not purport to create a presumption of bad faith.

One cannot fault Johnson for attempting to refute the existence of a requirement that he show bad faith in the destruction of evidence in order to establish a due process violation. The evidence in this case is not amenable to such a showing. Rather, the evidence supports the district court's finding that Deputy Kooser's motive for destroying the field notes was entirely benign. Moreover, one cannot declare that the benefits of redundancy were readily apparent in that circumstance. Once the deputy believed that he had fully and accurately transcribed the shorthand field notes into a

more comprehensible form in the official reports, he had no apparent reason to suspect that the shorthand notes themselves might be helpful or potentially exculpatory for the defense. In short, Johnson failed to establish that the deputy's destruction of or failure to preserve the field notes constituted a violation of Johnson's constitutional right to due process.

The other destruction/preservation complaint raised by Johnson involves a function on the breathalyzer machine that allows for the trapping and storing of a portion of the breath sample, which can then be retested at a later date. Johnson complains that the State did not utilize that function to preserve his sample. He argues that failing to keep the sample for further testing denied him the right to effectively confront the witnesses against him and denied him the right to a fair trial. We disagree.

Johnson acknowledges that in *California v. Trombetta*, 467 U.S. 479, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984), the United States Supreme Court found that the State's failure to preserve a breath sample did not violate the defendant's due process rights. *Trombetta* states:

"Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. . . . [The] evidence must both possess an exculpatory value that was apparent before it was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." 467 U.S. at 488-89.

But Johnson urges us to find that his case is factually distinguishable from *Trombetta* because the Intoxilyzer 5000 result of .084 in his case was only slightly over the legal limit of .08 and that excess amount of .004 was within the allowable standard deviation for a properly functioning breathalyzer. In other words, it should have been apparent that a retest of the breath sample could have generated an exculpatory result of less than .08 simply because the machine is allowed to be that inaccurate. While Johnson's arguments are facially seductive, *Trombetta* specifically discussed the contingency of an inaccurate test result:

"Even if one were to assume that the Intoxilyzer results in this case were inaccurate and that breath samples might therefore have been exculpatory, it does

not follow that respondents were without alternative means of demonstrating their innocence. Respondents and *amici* have identified only a limited number of ways in which an Intoxilyzer might malfunction: faulty calibration, extraneous interference with machine measurements, and operator error. . . . Respondents were perfectly capable of raising these issues without resort to preserved breath samples. To protect against faulty calibration, California gives drunken driving defendants the opportunity to inspect the machine used to test their breath as well as that machine's weekly calibration results and the breath samples used in the calibrations. . . . Respondents could have utilized these data to impeach the machine's reliability. As to improper measurements, the parties have identified only two sources capable of interfering with test results: radio waves and chemicals that appear in the blood of those who are dieting. For defendants whose test results might have been affected by either of these factors, it remains possible to introduce at trial evidence demonstrating that the defendant was dieting at the time of the test or that the test was conducted near a source of radio waves. Finally, as to operator error, the defendant retains the right to cross-examine the law enforcement officer who administered the Intoxilyzer test, and to attempt to raise doubts in the mind of the factfinder whether the test was properly administered." 467 U.S. at 490.

More importantly, however, Kansas statutes specifically afford a DUI defendant a "meaningful opportunity to present a complete defense" to an Intoxilyzer 5000 test result. 467 U.S. at 485. K.S.A. 2007 Supp. 8-1001(k)(9) provides an individual with the right and opportunity to secure additional testing from a source completely independent of the Intoxilyzer 5000. In other words, the destroyed evidence—Johnson's breath in the Intoxilyzer 500—was not "of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." 467 U.S. at 489. Johnson could have obtained comparable evidence by simply exercising the right of which he was advised, *i.e.*, independent testing. In short, the State's failure to trap and store Johnson's breath in the Intoxilyzer 5000 machine did not violate Johnson's right to confront witnesses against him and did not violate his right to a fundamentally fair trial.

## WARRANTLESS BREATH TEST

Johnson contends that the district court should have suppressed the results of his breath test for a variety of reasons. We discern that his principal complaints are that the deputy lacked reasonable

grounds or probable cause to request the testing, that our implied consent laws violate the Fourth Amendment, and that there were no exigent circumstances present at the prearranged checkpoint which would justify an exception to the Fourth Amendment's warrant requirement. All of Johnson's arguments are unavailing.

*Standard of Review*

The court uses a bifurcated standard when reviewing a district court's decision on a motion to suppress. Without reweighing the evidence, the appellate court reviews the district court's findings to determine whether they are supported by substantial competent evidence. The ultimate legal conclusion is reviewed using a de novo standard. *State v. Sanchez-Loredo*, 294 Kan. 50, 54, 272 P.3d 34 (2012). When the material facts to a trial court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Anderson*, 281 Kan. 896, 900-01, 136 P.3d 406 (2006). Whether reasonable grounds exist to believe a person has been operating a vehicle while under the influence of alcohol is a question of law. See *Poteet v. Kansas Dept. of Revenue*, 43 Kan. App. 2d 412, 416, 233 P.3d 286 (2010).

To the extent Johnson is challenging the constitutionality of our implied consent laws, he has presented a question of law subject to unlimited review.

*Analysis*

Johnson does not deny that he was operating a vehicle within the state of Kansas when he entered the checkpoint. Accordingly, pursuant to K.S.A. 2007 Supp. 8-1001(a), Johnson was "deemed to have given consent . . . to submit to one or more tests of [his] blood, breath, urine or other bodily substance to determine the presence of alcohol or drugs." Subsection (b) of that statute informed the deputy, in relevant part, as follows:

"(b) A law enforcement officer shall request a person to submit to a test or tests deemed consented to under subsection (a): (1) If the officer has reasonable grounds to believe the person was operating or attempting to operate a vehicle while under the influence of alcohol or drugs, or both, . . . and one of the following conditions exists: (A) The person has been arrested or otherwise taken into custody

for any offense involving operation or attempted operation of a vehicle while under the influence of alcohol or drugs, or both . . . ." K.S.A. 2007 Supp. 8-1001.

The reasonable grounds test of K.S.A. 2007 Supp. 8-1001(b) is strongly related to the standard for determining probable cause to arrest. *Allen v. Kansas Dept. of Revenue*, 292 Kan. 653, Syl. ¶ 1, 256 P.3d 845 (2011). Probable cause to arrest is the reasonable belief, drawn from the totality of information and reasonable inferences available to the arresting officer, that the defendant has committed or is committing a specific crime. See *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 20, 290 P.3d 555 (2012).

Here, Deputy Kooser observed the following: When entering the check lane, Johnson's vehicle nearly struck another vehicle; Johnson's eyes were bloodshot and watery; Johnson emitted a strong odor of alcohol; Johnson admitted that he had consumed alcohol; and Johnson failed the field sobriety tests by exhibiting three clues on the walk-and-turn test and two clues on the one-leg-stand test, both results being indicative of unlawful intoxication. From the totality of the circumstances, it was objectively reasonable for Deputy Kooser to form the belief that Johnson had committed the crime of DUI. *Cf. Allen*, 292 Kan. at 658-59; *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, 515, 518-19, 242 P.3d 1179 (2010); *State v. Shaw*, 37 Kan. App. 2d 485, 491, 154 P.3d 524, *rev. denied* 284 Kan. 950 (2007); *Campbell v. Kansas Dept. of Revenue*, 25 Kan. App. 2d 430, 431-32, 962 P.2d 1150, *rev. denied* 266 Kan. 1107 (1998); *Sullivan v. Kansas Dept. of Revenue*, 15 Kan. App. 2d 705, 707-08, 815 P.2d 566 (1991).

Johnson suggests that while it may have been permissible for the deputy to request the breath test for purposes of suspending Johnson's driver's license, the use of the results in a criminal prosecution is constitutionally impermissible. Pointedly, Johnson cites to no authority to support that contention. Perhaps that is because we have explicitly held that "compulsory testing for alcohol or drugs through drivers' implied, even coerced, consent does not violate the Constitution; it is reasonable in light of the State's compelling interest in safety on the public roads." *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 635, 176 P.3d 938 (2008). Accordingly, the

test results lawfully obtained pursuant to K.S.A. 2007 Supp. 8-1001 are admissible in court as direct evidence of the defendant's blood-alcohol content in both driver's license suspension proceedings and criminal prosecutions for DUI. See *State v. Edgar*, 45 Kan. App. 2d 340, 349, 246 P.3d 1013 (2011), *aff'd in part and rev'd in part on other grounds*, 296 Kan. 513, 294 P.3d 251 (February 1, 2013).

Finally, Johnson reminds us that under the Fourth and Fourteenth Amendments to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights, a search conducted without a warrant is per se unreasonable, unless a specifically established exception applies. See *State v. Damm*, 246 Kan. 220, 221, 787 P.2d 1185 (1990). It is the State's burden to validate a warrantless search by fitting it within one of the recognized exceptions, which are: consent; search incident to a lawful arrest; stop and frisk; probable cause plus exigent circumstances; the emergency doctrine; inventory searches; plain view or feel; and administrative searches of closely regulated businesses. *Sanchez-Loredo*, 294 Kan. at 55.

Johnson's argument focuses on the probable cause plus exigent circumstances exception. He argues that because the checkpoint was prearranged and the State knew in advance that searches would be performed on some of the drivers coming through the checkpoint, there were no exigent circumstances in play. He proffers that the State could have had magistrates on call to issue warrants as needed during the operation of the checkpoint.

There are a number of reasons to reject Johnson's proffered theory, but it is enough to clarify that the exception applicable in this circumstance is consent. Although probable cause comes into play in determining whether the law enforcement officer shall request one of the tests listed in K.S.A. 2007 Supp. 8-1001(a), the statute is all about implied consent to the testing. Moreover, Johnson expressly consented to the Intoxilyzer 5000 testing. In other words, having established the recognized warrantless search exception of consent, the State was not required to also establish probable cause plus exigent circumstances.

In short, Johnson has not presented a viable ground upon which we could reverse the district court's denial of his motion to suppress the breath test results.

## CERTIFICATION RECORDS

The third issue set forth in Johnson's petition for review claims that the district court erred in admitting evidence of certain certifications relevant to the administration of the Intoxilyzer 5000 breath test. Johnson claims that without the testimony of the person that made the respective certification, he was denied his constitutional right to confront the witnesses against him, as recently explained in *Crawford v. Washington,* 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

*Standard of Review*

"We employ an unlimited standard of review when addressing issues pertaining to the Confrontation Clause of the Sixth Amendment to the United States Constitution." *State v. Leshay,* 289 Kan. 546, 547, 213 P.3d 1071 (2009) (citing *State v. Noah,* 284 Kan. 608, 612, 162 P.3d 799 [2007]); see *State v. Ransom,* 288 Kan. 697, 708-09, 207 P.3d 208 (2009) (whether confrontation rights have been violated is question of law subject to unlimited review).

*Analysis*

The records which Johnson challenges on confrontation grounds are: (1) the certification permitting the Sedgwick County Sheriff's Department to conduct Intoxilyzer 5000 testing; (2) the certification of Deputy Kooser as being authorized to conduct Intoxilyzer 5000 testing; and (3) the certification of the Intoxilyzer 5000 machine, as required by the Kansas Department of Health and Environment (KDHE). Johnson does not specifically dispute the content of those certifications. Rather, he contends that *Crawford* mandated that the person actually issuing each certification document had to testify in person, so that Johnson could confront and cross-examine each such person, thereby safeguarding his constitutional right of confrontation. We disagree.

*Crawford* did hold that certain out-of-court statements are inadmissible at trial unless the State can prove that the person making the statement is unavailable and that the defendant had a prior opportunity to cross-examine that declarant. 541 U.S. at 68. But *Crawford* also explained that the admission of a hearsay statement

only implicates a defendant's rights under the Sixth Amendment Confrontation Clause if the statement is deemed to be "testimonial." 541 U.S. at 68.

Recently, we had the opportunity to apply *Crawford* and its progeny, *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009), and *Bullcoming v. New Mexico*, 564 U.S. 647, 131 S. Ct. 2705, 2717, 180 L. Ed. 2d 610 (2011), on the question of whether a certificate of calibration for an Intoxilyzer 5000 machine was a testimonial statement. *State v. Benson*, 295 Kan. 1061, 1064-65, 287 P.3d 927 (2012). Ultimately, *Benson* held:

> "In summary, the certificate of calibration in this case was routinely generated as part of the regular equipment maintenance. It was not created to establish a specific element in the prosecution of Benson's case. Further, the certificate speaks only to the reliability of the evidence that Benson's blood alcohol level was above the legal limit, it does not prove or disprove that element. Consequently, we hold that the certificate of calibration is not a testimonial statement and is not subject to the Confrontation Clause requirements of *Crawford*. The district court did not violate Benson's Sixth Amendment rights by admitting the certificate." 295 Kan. at 1067-68.

Granted, here we are being asked to consider the certifications of the sheriff's department and the deputy, in addition to the machine certification. But the rationale is the same. The records establishing that the Sedgwick County Sheriff's Department and Deputy Kooser were certified to conduct Intoxilyzer 5000 testing were not created for the purpose of prosecuting any specific defendant or for the purpose of establishing the elements of any specified criminal offense. Rather, the documents were created in order to authorize the administration of the necessary law enforcement duties of the Sedgwick County Sheriff's Department and one of its duly commissioned deputies. Accordingly, we hold that the certifications of law enforcement agencies and individual officers that simply establish their respective authority to conduct testing on a particular breathalyzer machine are not testimonial statements subject to the Confrontation Clause requirements of *Crawford*. Therefore, the district court did not violate Johnson's right of confrontation when it admitted the challenged certification records.

## Issue Not Presented for Review

In his brief to the Court of Appeals, Johnson also raised an issue alleging that the State laid an inadequate foundation for the admission of the breath test results. Specifically, he argued that KDHE protocol for the operation of the Intoxilyzer 5000 requires that the temperature of the simulator solution used during testing be maintained between 33.8 and 34.2 degrees Celsius. Although the deputy testified that the temperature was 34 degrees Celsius, which was within the limits set by KDHE regulations, Johnson argues that the State should have proved that the thermometer used to measure the temperature of the simulator solution was itself calibrated and accurate in order to strictly comply with KDHE requirements. Therefore, Johnson contends that the district court should have refused to admit the test results based upon an insufficient foundation. The Court of Appeals held that the State had laid the proper foundation for compliance with the KDHE protocol and that any argument Johnson might have about the accuracy of the thermometer used to determine regulatory compliance would simply impact the weight of the evidence, not its admissibility.

In his petition for review to this court, Johnson only identified the three issues discussed above; he did not list the insufficient foundation issue. Our procedure for petitions for review of Court of Appeals decisions is governed by our Supreme Court Rule 8.03 (2012 Kan. Ct. R. Annot. 72). That rule references the issues to be considered on review in two places. First, Rule 8.03(a)(4) speaks to the content of the petition for review and provides that the petition must contain concise statements of certain matters, including the following directive with respect to issues:

"(C) A statement of the issues decided by the Court of Appeals of which review is sought. *The court will not consider issues not presented or fairly included in the petition.* The court, however, may address a plain error not presented. In a civil case, the petitioner also must list, separately and without argument, additional issues decided by the district court which were presented to, but not decided by, the Court of Appeals, which the petitioner wishes to have determined if review is granted. In a criminal case, the Supreme Court will not review a conviction reversed by the Court of Appeals unless the prosecution preserves the issue by

filing a petition or cross-petition for review." (Emphasis added.) 2012 Kan. Ct. R. Annot. 73.

As noted, Johnson's petition did not present or fairly include the insufficient foundation issue. His supplemental brief to this court, however, sent a different message by listing all four issues presented to the Court of Appeals, including his recitation of the insufficient foundation issue. But he presented no argument on this issue, simply declaring that his brief to the Court of Appeals "does not require supplementation prior to review by the Supreme Court."

In another section, Rule 8.03(g), our petition for review rule speaks to the procedure subsequent to the order granting review, and in subsection (1) we address the issues that are subject to review. Specifically, Rule 8.03(g)(1) states that, if the Supreme Court has not limited the issues to be reviewed, "the issues before the Supreme Court include all issues properly before the Court of Appeals which the petition for review or cross-petition allege were decided erroneously by the Court of Appeals." 2012 Kan. Ct. R. Annot. 75. Here, there is no allegation in the petition for review that the Court of Appeals erroneously decided the insufficient foundation issue. Likewise, there is no argument in the supplemental brief from which we could discern what allegation of error by the Court of Appeals that Johnson might be asserting.

This is not a circumstance where the petitioner has only technically challenged one of two bases upon which the Court of Appeals decided an issue. Cf. State v. Allen, 293 Kan. 793, 795-96, 268 P.3d 1198 (2012) (petition to review Court of Appeals' decision on merits of issue does not permit review of Court of Appeals' alternative holding on preservation of the issue). Here, Johnson failed to identify a separate and distinct issue in his petition for review. One can only speculate on whether this court would have granted review on the insufficient foundation issue if it had been presented or fairly included in the petition. Moreover, the omission of the issue from the petition for review denied the State an opportunity to challenge the propriety of our granting review on that

issue. Accordingly, we decline to address the merits of the unpresented issue.

Affirmed.