NOT DESIGNATED FOR PUBLICATION

No. 121,232

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DYLAN MITCHELL HUSTON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ford District Court; SIDNEY R. THOMAS, judge. Opinion filed July 24, 2020. Affirmed.

*Michael S. Holland II*, of Holland and Holland, of Russell, for appellant.

*Michael J. Duenes*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., WARNER, J., and ROBERT J. WONNELL, District Judge, assigned.

PER CURIAM: After determining that Dylan Mitchell Huston had violated various traffic laws including the operation of a vehicle under the influence of alcohol, Deputy Eric Fisher arrested him on January 14, 2018. Huston was charged with one count each of operating a motor vehicle while under the influence of alcohol, reckless driving, speeding, improper driving on a laned roadway, and driving left of the center lane. At a hearing on a motion to suppress, Huston argued that Fisher lacked probable cause to place him under arrest. The district court ultimately found that Fisher had probable cause to arrest Huston. Subsequently, Huston agreed to a bench trial on stipulated facts and the district court found Huston guilty of all five charges. Huston timely appealed.

1

*Factual Background*

On January 14, 2018, local law enforcement responded to a request for assistance at Cattlemen's in Dodge City. A witness told police that she had taken keys from an individual, later identified as Huston, to keep him from driving his vehicle home, and he became upset. Upon arrival, Huston was still upset and Fisher intervened in the conversation between him and the witness. At that point, Fisher noticed an odor of alcohol and observed Huston struggling to maintain his balance. Fisher also stated that Huston was lethargic and had slurred speech. No arrests were made and the officers left the establishment.

Suspecting that Huston may ultimately ignore the advice of the witness, Fisher proceeded to park his patrol vehicle in the parking lot across the street. After staying at the establishment a little while longer, Huston left the establishment and drove his vehicle onto public roads. Fisher was able to confirm that Huston was the driver after seeing his face in the streetlight.

Huston operated his vehicle through town and ended up on Butter and Egg Road just outside of the city. At this point, Huston began traveling at approximately 80 miles per hour in a 55 mile per hour zone. Butter and Egg Road is a predominately unmarked, blacktop county road southeast of downtown Dodge City. Fisher observed Huston driving from one side of the road to the other. At one point, Huston went into the ditch and came back onto the road causing snow to fly from his tires. At this point, Fisher pulled Huston over just before Spur on Lariat Road.

Approximately 10 minutes had passed between the time Fisher left the parking lot and the time he pulled over Huston. Still detecting an odor of alcohol, Fisher asked Huston if he would perform field sobriety tests and Huston stated "yeah, you're good". After exiting the vehicle, Huston refused to cooperate. Fisher tried initiating the field

2

sobriety tests but Huston would not attempt them. Huston also continued to display difficulty standing up, was slow and lethargic. At this point, Huston was placed under arrest and taken into custody.

Although Fisher had the necessary equipment, he never performed a PBT before placing Huston under arrest. At the jail, Huston refused to submit to a breath test after being given the implied consent advisories in the DC-70 form as required by the Kansas Implied Consent Law. Fisher subsequently applied for a search warrant for a blood draw. Within three hours, a district judge granted the search warrant and an EMS with the Ford County Fire Department performed the blood draw. The lab report of 0.21 grams of alcohol per 100 milliliters of blood confirmed Fisher's reasonable suspicion that Huston had operated his vehicle under the influence of alcohol.

Huston was charged with one count each of operating a motor vehicle while under the influence of alcohol, reckless driving, speeding, improper driving on a laned roadway, and driving left of the center lane. On March 19, 2018, Huston filed a motion to suppress. At the hearing on the motion, Huston argued that Fisher lacked probable cause to place him under arrest. Fisher was the only witness to testify at the hearing. After hearing Fisher's testimony and the parties' arguments, the district court ultimately found that Fisher had probable cause to arrest Huston. Subsequently, Huston agreed to a bench trial on stipulated facts and the district court found Huston guilty of all five charges.

Huston timely appeals.

*Did the District Court Err in Denying the Motion to Suppress?*

The standard of review for a district court's decision on a motion to suppress has two components. The appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. In reviewing

3

the factual findings, the appellate court does not reweigh the evidence or assess the credibility of witnesses. The ultimate legal conclusions, however, are reviewed using a de novo standard. *State v. Talkington*, 301 Kan. 453, 461, 345 P.3d 258 (2015). The trial in this case was to the court on stipulated facts. Accordingly, our analysis is predominately focused on the legal conclusions applied to the facts.

The district judge found that Fisher identified a strong odor of alcohol on Huston during the first encounter. Fisher also recognized that Huston's movements were lethargic and Huston had "faulty thought processes," which were consistent with Fisher's concerns.

The district judge found that Fisher had "much DUI investigation experience", that he identified a strong odor of alcohol at the bar and after stopping the vehicle, that Huston was lethargic and exhibited a faulty thought process. The court specifically found that Fisher had reasonable suspicion once he observed Huston drive his vehicle. Fisher's concerns were reinforced after observing Huston's erratic driving patterns on the country road. After pulling Huston over, Fisher observed again that Huston was "uncooperative, not following directions, and [had a] strong odor of alcohol." The district judge concluded that these facts supported probable cause that Huston was driving under the influence.

On appeal, Huston argues that the State did not meet its burden to prove Fisher had probable cause to place him under arrest. Huston contends that even though Fisher may have originally had reasonable suspicion to believe he was driving under the influence, Fisher's failure to complete field sobriety testing and perform a PBT was fatal to this issue of probable cause.

Huston relies on *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 290 P.3d 555 (2012), and a number of other cases, to argue that the Kansas Supreme Court has clarified

the probable cause standard and what constitutes probable cause in a DUI case. In *Sloop*, the Kansas Supreme Court explained:

> "'Probable cause is the reasonable belief that a specific crime has been or is being committed and that the defendant committed the crime. Existence of probable cause must be determined by consideration of the information and fair inferences therefrom, known to the officer at the time of arrest. Probable cause is determined by evaluating the totality of the circumstances. As in other totality of the circumstances tests, there is no rigid application of factors and courts should not merely count the facts or factors that support one side of the determination or the other.' [Citations omitted.]" 296 Kan. at 20.

The court went on to add that in previous cases it held that when attempting to establish probable cause: "'It is not necessary that the evidence relied upon establish guilt beyond a reasonable doubt. The evidence need not even prove that guilt is more probable than not. It is sufficient if the information leads a reasonable officer to believe *that guilt is more than a possibility*.'" 296 Kan. at 20. However, the court held the "use of this additional, italicized factor is no longer approved" because it "crept into our caselaw apparently without explanation," and "has received undue emphasis in the probable cause calculus, sometimes to the exclusion of other considerations." 296 Kan. at 21.

Huston also cites *City of Wichita v. Molitor*, 301 Kan. 251, 341 P.3d 1275 (2015), and claims the court found "preliminary breath test results inadmissible where the officer lacked the requisite reasonable suspicion after field sobriety testing indicated a lack of impairment." But that is a mischaracterization of the case.

In *Molitor*, the defendant was stopped after he failed to use his turn signal when he made a turn. The officer smelled alcohol coming from the vehicle and observed that Molitor had watery, bloodshot eyes. Molitor told the officer he had consumed two or three beers, but "Molitor's speech was not slurred; he had no difficulty producing his driver's license, insurance information, and vehicle registration; and he did not lose his

5

balance while exiting his vehicle or walking thereafter." 301 Kan. at 253. The officer proceeded to administer field sobriety tests, including the Horizontal Gaze Nystagmus (HGN), the walk-and-turn, and the one-leg stand. The officer determined Molitor passed the walk-and-turn and one-leg stand tests but failed the HGN test. The officer then asked Molitor to take a PBT, which Molitor failed.

In its analysis, the Kansas Supreme Court stated that reasonable suspicion is determined by examining the totality of the circumstances and explained that "[t]he determination that reasonable suspicion existed obtains only after the interaction of all factors is assessed." 301 Kan. at 266. The court distinguished the weight accorded to a driver's admission to drinking "two or three beers," based on the existing statutory language that required the officer to reasonably believe a driver's blood alcohol concentration had reached .08 or more compared to a previous version of the same statute that required an officer to believe a driver has alcohol in their body. The court concluded:

> "Under the old statute, it would be compelling evidence that the driver had alcohol in his or her body, whereas, under the current statute, it would be evidence that tends to refute the notion that the driver was operating the vehicle with an illegal level of alcohol in his or her body, i.e., it is questionable whether two or three beers would raise the alcohol concentration in the breath or blood of a normal size man to .08 or more." 301 Kan. at 267.

The court also noted that "in *Pollman*, this court set a low bar for the observable indicia of intoxication that can support reasonable suspicion, noting only the smell of alcohol and the driver's admission to having drunk alcohol, in addition to the acts leading to the criminal obstruction of official duty charges." 301 Kan. at 268 (citing *State v. Pollman*, 286 Kan. 881, Syl. ¶ 7, 190 P.3d 234 [2008]). Furthermore, the court explained that "evidence of unsafe driving can suggest intoxication." 301 Kan. at 268. Thus, the court was primarily reinforcing precedent, not dissociating itself from it.

6

Huston cites *Casper v. Kansas Dept. of Revenue*, 309 Kan. 1211, 442 P.3d 1038 (2019), to support his contention that Fisher's failure to complete field sobriety testing and perform a PBT was fatal to the issue of probable cause. But his reliance is misguided.

In its analysis of *Casper*, the Kansas Supreme Court cited *Sloop* as support for the fact that warrantless arrests must be supported by probable cause, which is examined under the totality of the circumstances. 309 Kan. at 1214 (citing *Sloop*, 296 Kan. at 23). The court also discussed how it was technically incorrect for the district court to treat reasonable suspicion and probable cause as equivalent concepts but noted that the "court has implied the terms are essentially the same, with at most only subtle differences. 309 Kan. at 1215 (citing *State v. Johnson*, 297 Kan. 210, 222, 301 P.3d 287 [2013]).

The *Casper* court delineated between the objective and subjective aspects of field sobriety testing when it stated that "although field sobriety tests may have objective grading criteria that officers must follow, it is an officer's subjective opinion that determines whether a suspect has passed the objective field sobriety tests." 309 Kan. at 1219 (citing *Molitor*, 301 Kan. at 267). The court also noted that "field sobriety tests rely on common knowledge, not scientific foundation, for their reliability. It follows that a district court judge could rely on common knowledge to evaluate an arresting officer's grading of field sobriety tests" 309 Kan. at 1219. While Huston emphasizes the lack of the administration of a PBT in his case, the Kansas Supreme Court explained in *Casper* that

> "the district judge made it clear that he was considering the lack of a PBT alongside other evidence to determine whether 'the totality of the circumstances' showed that the officer had reasonable grounds to believe Casper was driving under the influence.
>
> ". . . The district court stated that the absence of a PBT was significant in this case because the evidence of driving under the influence was 'certainly not strong'" 309 Kan. at 1218.

The cases cited by Huston are distinguishable from the case at bar. The defendant in *Casper* did not execute a traffic violation and Huston did. The defendant in *Molitor* cooperated with field sobriety tests and Huston did not. None of the cases cited by Huston stand for the proposition that failure to administer a PBT alone is fatal to a finding of probable cause. Still, the line of cases that Huston cites reinforce the fact that a district court should analyze the totality of the circumstances, including the lack of a PBT, when it determines whether an officer had probable cause.

The State cites *State v. Chavez-Majors*, 310 Kan. 1048, 454 P.3d 600 (2019), to support its contention that Fisher had probable cause. In *Chavez-Majors*, an officer directed EMS personnel to draw Chavez-Majors' blood after Chavez-Majors crashed his motorcycle and the officer smelled alcohol on Chavez-Majors' breath. The officer did not obtain a warrant and Chavez-Majors was unconscious when the officer read him the implied consent forms. Chavez-Majors moved to suppress the blood draw evidence arguing that it was an unreasonable search.

In analyzing whether probable cause existed, the Kansas Supreme Court noted "the State had to establish that [the officer] had probable cause to believe Chavez-Majors had been driving his vehicle while the alcohol concentration in his blood was .08 or more." *Chavez-Majors*, 310 Kan. at 1055. The court reinforced the fact that both "'unsafe driving'" and the "smell of alcohol" can suggest intoxication. 310 Kan. at 1056-57 (citing *Molitor*, 301 Kan. at 251; *Johnson*, 297 Kan. at 222). The court also reiterated that "[w]hether an officer had probable cause depends on '"the facts and circumstances within the arresting officers' knowledge."'" 310 Kan. at 1057 (quoting *State v. Ramirez*, 278 Kan. 402, 406, 100 P.3d. 94 [2004]).

The requirement in this case is no different. This court must look at the totality of circumstances known to Fisher at the time of arrest. After hearing the evidence, the district court determined that probable cause existed based on all of the specific factual

8

findings listed above under the required totality of circumstances analysis, including the fact that Huston would not cooperate with the field sobriety tests. Substantial competent evidence supported the district court's factual finding and correct legal conclusion was reached. The district court is affirmed.

Affirmed.