NOT DESIGNATED FOR PUBLICATION

No. 128,342

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CHRISTOPHER ERWIN,
*Appellant*,

v.

JEFFREY ZMUDA, SECRETARY OF DEPARTMENT OF CORRECTIONS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Butler District Court; JOHN E. SANDERS, judge. Submitted without oral argument. Opinion filed January 16, 2026. Affirmed.

*Mark Sevart*, of Derby, for appellant.

*Elizabeth Fowler*, legal counsel, Kansas Department of Corrections, for appellee.

Before CLINE, P.J., BRUNS and COBLE, JJ.

CLINE, J.: Christopher Erwin appeals the district court's summary denial of his K.S.A. 60-1501 petition, in which he challenged four prison disciplinary convictions. He claims his due process rights were violated because he did not receive an impartial hearing, he was prevented from calling certain witnesses and presenting video footage of one of the incidents at his hearing, and the convictions were not supported by sufficient evidence. After reviewing the record, we find no violation and affirm the court's decision.

1

FACTUAL AND PROCEDURAL BACKGROUND

While in custody at the El Dorado Correctional Facility, Erwin was cited for four disciplinary infractions committed against correctional facility staff and officers. After an evidentiary hearing, he was found guilty of battery in two cases, guilty of threats in another, and guilty of disobeying orders and making threats in the fourth case. He was fined, placed in segregation for a time, lost some good time credit, and his privileges were restricted for a time.

Erwin appealed these decisions to the Secretary of the Kansas Department of Corrections (KDOC), Jeffrey Zmuda, who approved all four findings. He then petitioned for a writ of habeas corpus under K.S.A. 60-1501, asking the district court to expunge the disciplinary infractions from his record, to release him from disciplinary segregation immediately or otherwise compel the Secretary to issue a definite release date from segregation, and to return his property—money taken in the form of fines.

The district court eventually summarily dismissed the case after finding Erwin failed to state a cause of action. The court found Erwin's convictions were supported by "some evidence"—the standard in prison disciplinary cases—and that he had failed to allege shocking or intolerable conduct or due process violations. See *May v. Cline*, 304 Kan. 671, 674-75, 372 P.3d 1242 (2016) (prison disciplinary convictions reviewed to determine whether the evidence provides some support for the disciplinary authority's conclusion); *Johnson v. State*, 289 Kan. 642, 648, 215 P.3d 575 (2009) ("To avoid summary dismissal of a K.S.A. 60-1501 petition, the petitioner's allegations must be of shocking and intolerable conduct or continuing mistreatment of a constitutional stature."). Erwin timely appealed.

I. *Was Erwin afforded due process in his disciplinary hearings?*

Erwin argues his procedural due process rights were violated in two ways. First, he claims that he did not receive an impartial hearing since the warden chose the hearing officer. Next, he asserts that because the hearings were held at a different correctional facility rather than the facility where the infractions occurred, his ability to call witnesses and present evidence was inhibited.

*Standard of Review and Relevant Legal Framework*

Whether due process has been afforded is a question of law over which we have unlimited review. *Hogue v. Bruce*, 279 Kan. 848, 850, 113 P.3d 234 (2005).

To establish a claim for a violation of due process in a habeas corpus proceeding, an inmate must establish a deprivation of a recognized liberty or property interest. See *Hogue*, at 850-51. Once an inmate demonstrates a deprivation of a protected interest, we next look at the extent and nature of the due process that was required in the situation. *Johnson*, 289 Kan. 642, Syl. ¶ 3. That is, "due process" is not a one-size-fits-all concept but, instead, focuses on whether an individual was treated fairly by government officials in a specific situation. See *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895, 81 S. Ct. 1743, 6 L. Ed. 2d 1230 (1961) ("The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation."). This means that we must consider the protected interests Erwin contends were deprived in the context of prison disciplinary hearings.

*Erwin has failed to demonstrate a violation of his procedural due process rights.*

"[C]onvicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish*, 441 U.S. 520, 545, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979); *Rice v. State*, 278 Kan. 309, 321, 95 P.3d 994 (2004). In prison disciplinary hearings, inmates are still entitled to rights such as written notice of the charges, an impartial hearing, the opportunity to call witnesses as well as present documentary evidence, and a written statement of the findings and reasons for the decision reached by the administrative hearing officer. *Hogue*, 279 Kan. at 851 (quoting *In re Habeas Corpus Application of Pierpoint*, 271 Kan. 620, 627, 24 P.3d 128 [2001]).

Although some of Erwin's claims implicate protected rights, he has failed to establish those rights were violated.

To begin, in two of his cases, case number 22-02-241 and case number 22-02-254, the only punishment Erwin received was a total of 30 days of disciplinary segregation and a total of 180 days of restriction from privileges. Yet disciplinary segregation and restriction from privileges alone do not amount to constitutionally protected interests, nor does a prisoner have a protected liberty interest in remaining in the general prison population. *Hardaway v. Larned Correctional Facility*, 44 Kan. App. 2d 504, 505, 238 P.3d 328 (2010); see *Ramirez v. State*, 23 Kan. App. 2d 445, 447, 931 P.2d 1265 (1997). Instead, a petition must allege "shocking and intolerable conduct or continuing mistreatment of a constitutional stature," such as an unreasonable duration of such conditions. *Johnson*, 289 Kan. at 648. Thus, these two cases fail to establish a violation of protected liberty interests as required to support a writ of habeas corpus. The district court properly dismissed Erwin's due process claim in these cases.

As for his other two cases, case number 22-02-139 and case number 22-02-260, in addition to disciplinary segregation and privilege restriction, Erwin received a $20 fine in

4

each case and lost five days of earned good time credit in one case. Erwin's fines constitute a property interest sufficient to implicate procedural due process. See *Stano v. Pryor*, 52 Kan. App. 2d 679, 682, 372 P.3d 427 (2016). And he earned good time credits, which "'are a protected liberty interest because the State has vested a statutory right to those credits.'" *Kesterson v. State*, 276 Kan. 732, 734, 79 P.3d 1074 (2003). Thus, in these two cases, Erwin has satisfied the first prong of the due process test by demonstrating both property and liberty interests were implicated. That said, he has failed to establish he was deprived of the requisite due process for either interest.

To begin, the warden appointed a disciplinary hearing officer who was neither the reporting officer, investigator, nor witness in the case under K.A.R. 44-13-105(b)(2). Erwin challenges this regulatory process in general but provides no support for his assertion that *his* disciplinary hearing officer was biased. In other words, stating the process is "inherently unfair" without providing any support for the assertion is insufficient.

An inmate made similar claims about the fairness of this regulatory process in *Washington v. Roberts*, 37 Kan. App. 2d 237, 152 P.3d 660 (2007). We found no due process violation there because the penalties imposed by the hearing officer were within the penalties contemplated by K.A.R. 44-12-1301(b). 37 Kan. App. 2d at 247. Likewise, Erwin's penalties for his class I offenses in these cases were within those contemplated by K.A.R. 44-12-1301(b).

As for Erwin's ability to call witnesses or present evidence, the hearing officer granted all of Erwin's witness requests and, while one evidentiary request could not be fulfilled because the evidence no longer existed, the officer did not prevent Erwin from presenting any evidence. For example, in case 22-02-139, Erwin requested that reporting officer CHS Tittsworth be called as a witness, and she was approved and testified at the hearing. When given the opportunity to question Tittsworth, Erwin asked:

"I/M to R/O: When I was yelling how long was it till, I got my insulin?

"R/O to I/M: I waited till you calmed down and for my safety, it was around 20 minutes.

"I/M to R/O: Nothing further."

And in case 22-02-260, Erwin again failed to question witnesses despite being given the chance to do so. He requested that reporting officer CSI Shields and witness CSI Chastain be called to testify, and both requests were approved. But, according to the hearing transcript, Erwin waived CSI Shields' testimony, and when CSI Chastain was called as a witness, Erwin "advised the hearing officer that he did not have any questions for the witness." In sum, the record shows Erwin received the requisite due process, but he chose not to take advantage of the opportunities he received to question these witnesses.

In addition to his claims about witnesses, Erwin's claim that he could not present video footage of one of the incidents at his hearing is also unavailing. Although the hearing officer requested the footage from the El Dorado Correctional Facility, the video was no longer available at the time of the hearing.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees access to certain exculpatory evidence. See *California v. Trombetta*, 467 U.S. 479, 485, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984). Yet there is no duty to preserve all evidence that might be significant. *State v. LaMae*, 268 Kan. 544, 550, 998 P.2d 106 (2000). Evidence that is irreplaceable and known to be exculpatory must be preserved. *Trombetta*, 467 U.S. at 488-89. And evidence that could be exculpatory cannot be destroyed in bad faith. See *State v. Johnson*, 297 Kan. 210, 217-18, 301 P.3d 287 (2013).

Here, because the video evidence is only potentially exculpatory, Erwin bears the burden to show that the State acted in bad faith in failing to preserve such evidence. "The determination of bad faith turns on the 'officers' knowledge of the exculpatory value of the evidence at the time it was lost or destroyed.'" 297 Kan. at 218. "[U]nless a defendant can show bad faith on the part of the [State], the failure to preserve potentially useful evidence does not constitute a denial of due process." 297 Kan. at 218.

There is no evidence that the State acted in bad faith in failing to preserve the video evidence. Erwin did not question why the video evidence was not saved nor did he assert bad faith in failing to preserve the evidence. Instead, both in his writ and on appeal, he based his argument on sufficiency of the evidence. He complained in his writ that no video evidence was offered to verify CHS Tittsworth's story. And, on appeal, he complained it was an "abuse of discretion" for the hearing officer to accept the witness' testimony about the incident without viewing the video footage. Neither of these allegations satisfies Erwin's burden to show the State acted in bad faith by failing to preserve the video.

We therefore find Erwin has failed to state a due process violation based on his claim of an impartial hearing or that he was prevented from presenting evidence at his hearing. We see no error in the district court's dismissal of Erwin's procedural due process claims.

II. *Was there sufficient evidence to support the guilty findings in Erwin's disciplinary cases?*

Erwin next asserts that because the disciplinary hearings consisted solely of his word against an officer's, this means that there was insufficient evidence to support the charges against him.

*Standard of Review and Relevant Legal Framework*

Prison disciplinary decisions are generally not subject to judicial review. *May*, 304 Kan. at 674; see also K.S.A. 77-603(c)(2) (exempting discipline of persons in the custody of the Secretary of Corrections from the Kansas Judicial Review Act). Again, a prisoner must demonstrate a constitutional violation. See *Hogue*, 279 Kan. at 850.

In the context of claims regarding a lack of evidentiary support for a disciplinary decision, our Supreme Court has found due process concerns are satisfied:

> "if there is any evidence in the record, even evidence which could be characterized as meager, that could support the conclusion of the disciplinary authority. Due process does not require that the evidence preclude other possible outcomes or conclusions, only that the evidence provides some support for the conclusion reached by the disciplinary authority such that the decision is not arbitrary." *May*, 304 Kan. 674-75.

Determining whether this standard is satisfied does not require the reviewing court to examine the entire record, make an independent assessment of witness credibility, or reweigh the evidence. The relevant question is whether there is any evidence in the record to support the conclusion reached by the disciplinary authority such that the decision is not arbitrary. 304 Kan. at 674-75.

*Erwin's disciplinary convictions were supported by sufficient evidence.*

As already explained, Erwin has not alleged that any protected interest has been infringed in case 22-02-241 and case 22-02-254. Therefore we need not analyze whether there was sufficient evidence to support the findings in these cases. Even so, we find evidence in the record to support his convictions in those cases.

In case 22-02-241, Erwin argues that the State produced insufficient evidence to support a guilty finding because the reporting officer testified in the following manner:

"I/M to R/O: You say that I threatened you, but you didn't say how this came about, what happened?
"R/O to I/M: You've had so many episodes I don't know which one your [*sic*] talking about, you said these things and it's a violation of the [K.A.R.].
"I/M to R/O: Where were you on this date?
"R/O to I/M: Don't remember, probably near the desk.
"I/M to R/O: Nothing further."

Erwin argues this shows that the reporting officer "does not answer the question before the tribunal and fails to provide a factual basis for the complaint at issue in the hearing." Still, this seems to misconstrue the question being asked. Erwin asked what happened that resulted in the threats being made, and the reporting officer said he could not remember what had caused this occurrence. This does not prove that Erwin did not make any threats. Instead, he seems to concede that threats were made and tried to ask about the circumstances justifying his behavior.

Additionally, in case 22-02-254, Erwin asserts that because the reporting officer could not explain where everyone was when the incident occurred, there is insufficient evidence to support the allegation. Even though the reporting officer could not detail everyone's exact location, he later clarified the location of the incident and what occurred:

"I/M to R/O: Where was everyone, who was where?
"R/O to I/M: I'm not sure, I don't remember off hand.
"I/M to R/O: Nothing further.
"H/O to R/O: Where did this happen at?
"R/O to H/O: Right in front of B2#131[.]
"H/O to R/O: You're sure that Erwin#123078 made the comments listed in your report? And that is what he said?

9

"R/O to H/O: Yes[.]

"H/O to R/O: You say that Erwin#123078 ran at CHS Tittsworth?

"R/O to H/O: Yes[.]

"H/O to R/O: What made you believe that he was going to batter her or harm her?

"R/O to H/O: His previous threats made me believe that, and his previous attack her [*sic*][.]

"H/O to R/O: You gave Erwin#123078 orders to stop resisting?

"R/O to H/O: Yes[.]

"H/O to R/O: Did he obey these orders promptly and respectfully?

"R/O to H/O: No[.]"

In addition to this testimony, the hearing officer reviewed the video surveillance footage of the incident. The hearing officer ultimately found Erwin guilty of disobeying orders and making threats. But he dismissed the assault charge and found that the video was insufficient. Since there was testimony and video footage that corroborated the report, there was sufficient evidence to support the guilty finding.

As for his conviction in case 22-02-139, Erwin challenges the credibility of the witness at his disciplinary hearing. He asserts that because the witness used the term "'hissy fit'" to describe his behavior while waiting for the administration of his insulin, this demonstrates that the witness was improperly biased against him. Erwin cites the following testimony to support his claim:

"H/O to R/O: What happened?

"R/O to H/O: I was on a call (medical), he threw his hissy fits because he didn't get his insulin, when I got up there I got him his insulin and when he was done with the needle he then grabbed my arm and pulled me in, officer Rivera helped me and apparently they heard me a [*sic*] scream, I don't know how many minutes it took to get me freed, they had to spray him, I had bruises and swollen arm/elbow, scratches on my wrists and on my forearm."

While this may not have been a great choice of words to refer to an inmate's behavior for a 20-minute delay of his medicine, it does not show a bias against Erwin. Rather, it seems to demonstrate why there was a delay—another ongoing medical emergency—and how Erwin was behaving based on the circumstances. We find there was sufficient evidence to support this guilty finding as well.

Finally, in case 22-02-260, Erwin asserts that because the reporting officer (the officer he kicked) did not testify, there is insufficient evidence to support the guilty finding. But he ignores the fact that he waived that officer's testimony.

Generally, a party may not invite an error and then complain of the error on appeal. *State v. Slusser*, 317 Kan. 174, 179, 527 P.3d 565 (2023). Here, "Inmate Erwin . . . waived the reporting officer's testimony" and had the disciplinary report read into the record.

Despite this waiver, the reporting officer declared under penalty of perjury that the facts alleged in the report were true and correct, and those facts supported the guilty finding. Thus, Erwin's assertion that no evidence supported this guilty finding also fails.

For each case, Erwin testified and the reporting officer either testified or their sworn statements from the report were read into the record, and, in some cases, other witnesses were called. For two of the four cases, video recordings from security cameras were used as evidence in the hearing officer's decision making process. There was some evidence to support each guilty finding, so we see no error in the district court's dismissal of his evidentiary claims.

Affirmed.