(233 P.3d 290)
No. 100,864

State of Kansas, *Appellee*, v. Andrew Johnson, *Appellant*.

Opinion filed May 28, 2010.

*Carl F.A. Maughan*, of Maughan & Maughan LC, of Wichita, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Steve Six*, attorney general, for appellee.

Before Hill, P.J., Pierron, J., and Bukaty, S.J.

Pierron, J.: Andrew Johnson appeals his conviction for misdemeanor driving under the influence of alcohol (DUI). Johnson had a blood-alcohol concentration exceeding the legal limit after being stopped at a sobriety check point in Wichita. Johnson chal-

lenges the district court's failure to dismiss the proceedings based on the destruction of the arresting officer's field notes and failure to preserve a breath sample stored in the Intoxilyzer 5000. He also argues the trial court erroneously denied his motion to suppress based on insufficient probable cause to request a breath test, the State's failure to lay sufficient foundation of calibrating the Intoxilyzer 5000, and his right of confrontation, which was violated by the admission of the certification of the Intoxilyzer 5000 by the sheriff's department and the individual deputy. We affirm.

On July 28 and 29, 2007, officers of the Sedgwick County Sheriff's Department conducted a DUI sobriety check point in Wichita. Johnson pulled into the check point around 1:25 a.m. Officer Kenneth Kooser testified that Johnson's vehicle almost struck another vehicle as it merged into one of the check lanes and then slowed up for the reflecting cones "as if it kind of snuck up on him." When asked if he had been drinking, Johnson told Officer Kooser that he had two beers. Officer Kooser testified there was an odor of alcoholic beverages coming from Johnson, his speech was not clear, and his eyes appeared to be bloodshot and watery. There was also an open 12-pack of beer on the floorboard behind the driver's seat. Officer Kooser asked Johnson to get out of the car and accompany him to an area designated for field sobriety testing. Officer Kooser alleged that Johnson swayed from side to side as they walked.

Johnson's performance on the field sobriety tests was captured on police video but unfortunately the video did not show Johnson walking to the testing area. In the video, Officer Kooser asked Johnson to perform field sobriety tests based on the odor of alcohol beverages coming from Johnson. Officer Kooser had Johnson perform the walk and turn test and the one-legged stand test. Johnson exhibited three clues of intoxication during the walk and turn test. He allegedly exhibited two clues of intoxication during the one-legged stand test. Officer Kooser believed Johnson was intoxicated and read him the implied consent advisories before requesting a breath test. Johnson consented to a breath test and blew a .084 blood-alcohol concentration in the Intoxilyzer 5000.

Johnson was charged with misdemeanor driving under the influence of alcohol with a blood-alcohol concentration of .08 or higher and alternatively with driving under the influence of alcohol to the extent that he could not safely operate a motor vehicle. Prior to trial, Johnson filed a motion to suppress the evidence of the warrantless search, a motion to dismiss based on the destruction of Officer Kooser's field notes, and the failure to save the breath sample contained in the tox trap in the Intoxilyzer. He also filed a motion in limine to exclude evidence of the breath test based on improper calibration of the Intoxilyzer. The district court conducted a pretrial evidentiary hearing on the motions and declined to grant any of the requested relief.

The district court granted Johnson's request for a jury trial. The jury found Johnson guilty of driving with a blood-alcohol concentration higher than .08 but acquitted him of the alternative charge of driving under the influence of alcohol to the extent he was incapable of safely operating a motor vehicle. The court denied Johnson's motion for a new trial and sentenced him to 48 hours' confinement and 1 year of probation.

First, Johnson first argues the district court erred in denying his motion to dismiss based on the destruction of Officer Kooser's field notes.

"Common sense suggests that when reviewing a trial court's denial of a motion to dismiss criminal charges, the applicable standard of review is determined by the ground on which dismissal was sought rather than a blanket standard for motions to dismiss." *State v. Garcia*, 282 Kan. 252, 259, 144 P.3d 684 (2006).

Johnson cites K.S.A. 22-3213 for authority that the State was required to produce all statements by the officers, including the field notes used by Officer Kooser in preparing his report. K.S.A. 22-3213(2) provides that in any criminal proceeding:

"After a witness called by the state has testified on direct examination, the court shall, on motion of the defendant, order the prosecution to produce any statement (as hereinafter defined) of the witness in the possession of the prosecution which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of

the witness, the court shall order it to be delivered directly to the defendant for his examination and use."

At the close of the evidence at trial, the district court conducted an evidentiary hearing on Johnson's motion to dismiss for the destruction of Officer Kooser's field notes.

Officer Kooser testified that everything contained in his field notes was transferred to his alcohol influence report or narrative report. He testified that he was unaware of any department policy concerning the retention of field notes and he had destroyed the notes concerning Johnson's DUI stop only because he had totally and accurately transferred them to the official reports.

In denying the motion to dismiss, the district court concluded: (1) There was no evidence of a department policy concerning maintenance of field notes and Officer Kooser was not aware of one; (2) Officer Kooser's destruction of the field notes was for "benign purposes, certainly not malignant purposes or detrimental by intent to the defense"; (3) Officer Kooser fully and accurately transferred his shorthand field notes into a more understandable account in the alcohol influence report or narrative report; (4) all reports had been made available to prosecution and defense; and (5) there was no evidence to support a finding that Officer Kooser knowingly destroyed the field notes because it was helpful to or potentially exculpatory for the defense.

"In cases where the State fails to preserve potentially useful evidence, there is no due process violation unless the defendant shows bad faith on the part of the State. *Arizona v. Youngblood,* 488 U.S. 51, 58, 102 L. Ed. 2d 281, 109 S. Ct. 333 (1988); *Taylor v. State,* 251 Kan. 272, 278, 834 P.2d 1325 (1992)[, *disapproved on other grounds State v. Rice,* 261 Kan. 567, 932 P.2d 981 (1997)]." *State v. LaMae,* 268 Kan. 544, 550, 998 P.2d 106 (2000). The question of whether the State acted in bad faith is a question of fact. 268 Kan. at 551. On appeal, this court reviews the district court's findings of fact to determine if they are supported by substantial competent evidence. Also, this court reviews the findings to determine if they are sufficient to support the district court's conclusions of law. *State v. Finley,* 273 Kan. 237, 241, 42 P.3d 723 (2002).

Substantial evidence possesses both relevance and substance and provides a substantial basis of fact from which the issues can reasonably be determined. Specifically, substantial evidence is legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. Walker*, 283 Kan. 587, 594-95, 153 P.3d 1257 (2007).

The United States Supreme Court has held that due process only requires the preservation of evidence which might play a significant role in the defendant's defense. *California v. Trombetta*, 467 U.S. 479, 485, 81 L. Ed. 2d 413, 104 S. Ct. 2528 (1984). The Court has also held that under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, good or bad faith on the part of the State is irrelevant when the State fails to disclose exculpatory and material evidence. However, the standard is different when the State fails to preserve evidence for which no more can be said than that the evidence could be subjected to tests and the results might exonerate the defendant. *Arizona v. Youngblood*, 488 U.S. 51, 57, 102 L. Ed. 2d 281, 109 S. Ct. 333 (1988), *reh. denied* 488 U.S. 1059 (1989).

The Court in *Youngblood* held that the *Trombetta* decision refused to impose an absolute duty on its policy to retain and preserve all material that might be of evidentiary significance in the prosecution of a defendant. 488 U.S. at 58. Moreover, the Court held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." 488 U.S. at 58. Kansas has adopted the ruling and reasoning of *Youngblood*. See, *e.g.*, *State v. Torres*, 280 Kan. 309, 321, 121 P.3d 429 (2005); *State v. Kleypas*, 272 Kan. 894, 936, 40 P.3d 139 (2001), *cert. denied* 537 U.S. 834 (2002).

We are not persuaded by Johnson's argument that the field notes contain a more contemporaneous and, therefore, presumably more accurate account of what happened at the time of his arrest. Officer Kooser's notes were in shorthand and were taken in rapid fashion during the events of Johnson's stop and arrest. From his shorthand notes, Officer Kooser prepared the alcohol influence report within hours of Johnson's arrest. Johnson entered the checkpoint at 1:25

a.m. Officer Kooser testified that he had completed his alcohol influence report by 4 a.m. It is difficult to argue that either Johnson's field notes or his reports are "more contemporaneous" than one another.

This case does not involve the complete destruction or a complete loss of evidence. Rather, it involved the transcription of notes into a more readable format. In light of the fact that Johnson's field sobriety tests were captured on video, we are hard pressed to find Officer Kooser's field notes would have included any evidence that defense counsel would not have covered in his cross-examination of Officer Kooser. Consequently, we cannot find a violation of Johnson's right to confront the witnesses against him. See, *e.g.*, *State v. Noah*, 284 Kan. 608, 616, 162 P.3d 799 (2007) (the Confrontation Clause guarantees an opportunity for effective cross-examination). We agree with the State that the only thing that can be said was that the field notes may have contained something that may have exonerated Johnson and that does not translate into evidence that was exculpatory.

There was substantial competent evidence to support the district court's findings that there was no bad faith on Officer Kooser's part. Here, as noted by the court, there was no evidence of bad faith presented by the defense and Officer Kooser testified he fully and accurately transcribed his entire field notes into either the alcohol influence report or the narrative report. The defense was able to fully explore all reports during cross-examination. Johnson was not denied a fair trial, and there was sufficient evidence to support the trial court's denial of his motion to dismiss for destruction of the field notes.

Along the same lines as the prior issue, Johnson also argues the district court erred in denying his motion to dismiss based on the failure of the police officers to preserve a breath sample in the Intoxilyzer. Johnson contends the failure to preserve the sample for further testing violated his right to effectively confront the witnesses and denied him a fair trial.

We have previous discussed *California v. Trombetta*, 467 U.S. 479, and *Arizona v. Youngblood*, 488 U.S. 51. The facts in *Trombetta* are very similar to the case at bar. The Supreme Court con-

sidered what might be an appropriate sanction where an intoxicated driver's breath sample was not preserved for use by the defense. In determining the materiality of destroyed evidence, the Court reasoned that Trombetta could not demonstrate: (1) a reasonable likelihood that the destroyed evidence contained any exculpatory value and (2) the inability to obtain comparable evidence by reasonable alternative means. 467 U.S. at 489. *Youngblood* extended *Trombetta* and concluded that in cases involving the failure to preserve "potentially useful" evidence, *i.e.* evidentiary material of which no more can be said that it could have been subjected to tests which might have exonerated the defendant, due process is not violated unless the defendant can show that law enforcement acted in bad faith in destroying the evidence. 488 U.S. at 57-58. The holding in *Youngblood* is applicable here again since there was not even a suggestion of bad faith on the part of the officers in disposing of the breath sample, and the Supreme Court concluded that the failure to preserve potentially useful evidence did not violate due process. 488 U.S. at 58.

Johnson acknowledges *Trombetta* and *Youngblood*. However, the crux of his argument is that in cases where a defendant's blood-alcohol concentration is without a doubt over the legal limit, the due process concerns of preserving a breath sample are not imperative. A second test will most likely demonstrate a high level of intoxication. See *Trombetta*, 467 U.S. at 489 ("In all but a tiny fraction of cases, preserved breath samples would simply confirm the Intoxilyzer's determination that the defendant had a high level of blood-alcohol concentration at the time of the test."). However, here, Johnson states he was a mere .004 over the legal limit and the due process concerns are paramount. In *Trombetta*, the defendant's blood-alcohol concentration was "substantially higher than 0.10 percent." 467 U.S. at 482. This issue is a substantial one.

The starting point in our analysis is the language of the pertinent statutes. Kansas law states that "[a]ny person who operates or attempts to operate a vehicle within this state is deemed to have given consent . . . to submit to one or more tests of the person's blood, breath, urine or other bodily substance to determine the presence of alcohol or drugs." K.S.A. 2009 Supp. 8-1001(a). If you

drive a vehicle in Kansas, you have consented to a blood-alcohol test given the police have sufficient grounds to request one. We have previously held that the results from a single breath test are scientifically reliable and, therefore, should be admitted into evidence. See *Meehan v. Kansas Dept. of Revenue*, 25 Kan. App. 2d 183, 192-94, 959 P.2d 940, *rev. denied* 365 Kan. 885 (1998). In denying Johnson's motion to dismiss, the trial court held that it would be unduly burdensome upon the State to maintain all samples without any actual evidence they would be beneficial.

Of great importance, the district court noted that the Kansas statutes contain provisions for separate testing if requested by the defendant. Here, Johnson did not request the opportunity for additional testing.

The question we must again address is whether Johnson showed that the State believed the breath sample was exculpatory evidence at the time it was destroyed. See *Finley*, 273 Kan. at 241-42; *LaMae*, 268 Kan. at 551. Evidence is exculpatory "if it tends to disprove a fact in issue which is material to guilt or punishment." *State v. Carmichael*, 240 Kan. 149, 153, 727 P.2d 918 (1986); see *Trombetta*, 467 U.S. at 485 (exculpatory evidence raises reasonable doubt as to the defendant's guilt). Material evidence must possess apparent exculpatory value before destruction and must be of such a nature that a defendant is unable to obtain comparable evidence by other reasonable and available means. 467 U.S. at 489.

We are not unsympathetic to Johnson's position that being just over the legal limit for driving under the influence of alcohol makes this a more difficult than usual case. However, we believe the legislature contemplated these close cases in allowing a right for independent analysis. A factor weighing against Johnson's argument is that under the informed consent statutes, the licensee is advised he or she has the right to secure additional alcohol testing on his or her own. K.S.A. 2009 Supp. 8-1001(k)(10). There is no contention raised by either side that Johnson requested an independent test.

We again find no deprivation of Johnson's constitutional rights. The United States Supreme Court has disagreed with Johnson's argument. See *Trombetta*, 467 U.S. 479. Johnson is asking us to

establish a sliding scale of due process deprivation based on the severity of a driver's intoxication. We decline Johnson's invitation and instead decide there is no evidence that the destroyed breath sample was exculpatory outside of wishful thinking on Johnson's part. We agree with the district court's analysis and find substantial ·evidence supports the court's decision.

Next, Johnson argues there was insufficient evidence for Officer Kooser to request a breath test and his motion to suppress the results should have been granted. Johnson also claims that in light of all the preparation and the detail that went into the DUI checkpoint, a warrantless search was unreasonable.

In a DUI case, the officer's factual basis for concluding that the defendant was intoxicated at the time of arrest determines whether the officer had probable cause to arrest. *City of Dodge City v. Norton*, 262 Kan. 199, 203, 936 P.2d 1356 (1997). "Thus, an appellate court's review of the trial court's determination of whether an officer had probable cause to make a warrantless arrest in a DUI case is a mixed question of law and fact." 262 Kan. at 203. Here, the facts are not in dispute; therefore, whether to suppress the evidence obtained after the arrest is a question of law over which this court has unlimited review. See *State v. Boyd*, 275 Kan. 271, 273, 64 P.3d 419 (2003). "Probable cause to arrest is that quantum of evidence that would lead a reasonably prudent police officer to believe that guilt is more than a mere possibility." *Campbell v. Kansas Dept. of Revenue*, 25 Kan. App. 2d 430, 431, 962 P.2d 1150, *rev. denied* 266 Kan. 1107 (1998) (citing *City of Dodge City*, 262 Kan. at 203-04).

Officer Kooser observed Johnson nearly crash as he merged for the DUI check lane and then appear to be surprised by the traffic cones. Officer Kooser noted an odor of alcohol, Johnson admitted he had been drinking, his eyes were blood shot and watery, and he exhibited multiple indications of intoxication in the walk and turn and the one-legged tests. These facts are not unlike those in *Campbell*, 25 Kan. App. 2d 430. Johnson was not severely over the legal limit when he failed the breath test. Johnson relies heavily on the fact that if you examine the video there is little evidence to show he was impaired.

A slightly intoxicated driver is not going to demonstrate the exaggerated actions of a severely drunk driver. The slightly intoxicated driver is only going to have minor imperfections in his or her performance, but that does not negate the failure of the test. No matter how well the driver can walk a straight line or balance on one foot, if the driver's blood-alcohol concentration is .08 or higher, he or she can no longer legally drive a vehicle in the state of Kansas. Accordingly, we have no difficulty in finding that the officer could reasonably have concluded that guilt was more than a mere possibility. Thus, under these facts, the officer had probable cause to arrest.

We also reject Johnson's arguments challenging the constitutionality of a warrantless breath test in a sobriety checkpoint. Sobriety checkpoints have been found to be constitutional under the Fourth Amendment to the United States Constitution and the Kansas Constitution Bill of Rights § 15. See *Davis v. Kansas Dept. of Revenue*, 252 Kan. 224, Syl. ¶ 1, 843 P.2d 260 (1992).

Given the great lengths the officers took in setting up the checkpoint, Johnson argues a magistrate judge could have been ready and available for the period during which the check point was conducted. He contends the officers could have used the vehicle computers or instant messaging capabilities to "take the probable cause decision from the hands of the arresting officer and place it in the hands of a neutral and detached magistrate as required by the constitution." While an interesting suggestion, we see no need for an "instant" magistrate. A reviewing court has sufficient tools even at a later time to make a valid judgment. While advances in technology could lead to something like that being suggested by Johnson, we do not see it as necessary now.

Johnson attempts to circumvent the principles of the Kansas implied consent law. We see no evidence the Kansas law is headed in the direction of Johnson's argument. See K.S.A. 2009 Supp. 8-1001; *Cuthbertson v. Kansas Dept. of Revenue*, 42 Kan. App. 2d 1049, 1055, 220 P.3d 379 (2009) ("The purpose of the implied consent law is to coerce submission to chemical testing by the threat of statutory penalties of license suspension and the admission into evidence in a DUI proceeding of the fact of refusal.")

(citing *Furthmyer v. Kansas Dept. of Revenue*, 256 Kan. 825, Syl. ¶ 1, 888 P.2d 832 [1995]). As long as the defendant has the benefit of judicial review and independent blood testing, we presently need nothing further in the way of constitutional protection for accused drivers.

Next, Johnson raises a very brief argument that the trial court abused its discretion in allowing the State to produce evidence of the breath test where there were serious concerns with the temperature of the simulator solution in the Intoxilyzer 5000.

K.S.A. 2009 Supp. 8-1002(a)(3) requires that an officer certify for any breath-test failure that the testing equipment was properly certified by Kansas Department of Health and Environment (KDHE), that the equipment operator was certified by KDHE, and that the testing procedures were done in accordance with KDHE requirements. Citing this statute, the Kansas Supreme Court has noted that "[t]he legislature has enacted provisions . . . in which breath tests are directed to be conducted under the KDHE protocols." *Hemphill v. Kansas Dept. of Revenue*, 270 Kan. 83, 88-89, 11 P.3d 1165 (2000). When testimony establishes that the requirements referenced in K.S.A. 2009 Supp. 8-1002(a)(3) have been met, *i.e.*, that both the machine and its operator were certified by KDHE and the testing was conducted in accordance with KDHE's testing protocols, the test result is admissible. *City of Overland Park v. Cunningham*, 253 Kan. 765, 772-73, 861 P.2d 1316 (1993).

According to this clear line of cases, the legislature has deemed alcohol breath tests admissible if the certification requirements are met and if the machine was operated in the manner provided by KDHE. A licensee can challenge, factually, whether the certifications were proper and whether the machine was operated in the manner required by the operations manual. Thus, a licensee can raise inconsistencies in the certification records or whether the testing officer actually followed all operational protocols. However, it is legislatively established that the results are admissible as a matter of law when the requisite foundation is laid under K.S.A. 2009 Supp. 8-1002(a)(3). Such a presumption is appropriate.

Officer Kooser testified that the temperature of the solution in the Intoxilyzer was 34 degrees Celsius. He testified the temperature was within the acceptable range of 33.8 degrees and 34.2 degrees Celsius as required by the KDHE protocol. Officer Kooser was authorized, trained, and certified to operate the Intoxilyzer 5000. Johnson argues the State failed to ascertain whether the thermometer used to ascertain the temperature was accurate. We agree with the trial court that Johnson's claim goes to the weight of the evidence, not the admissibility. At some point the foundation is sufficient. Should we follow Johnson's argument, we might then be asked that the third thermometer also be certified. This could go on forever.

Last, Johnson argues the trial court violated his right of confrontation by admitting certification documents of the sheriff's department, the administering deputy, and KDHE regulations relating to the Intoxilyzer 5000 without calling the witnesses who handled the calibration and certification process.

Johnson recognizes this issue has been decided directly against him in *State v. Dukes*, 38 Kan. App. 2d 958, Syl. ¶ 1, 174 P.3d 914 (2008), *aff'd* 290 Kan. 485, 231 P.3d 558 (2010):

"Documents showing certification or calibration of a breath-test machine or certification of the machine operator do not constitute testimonial evidence under *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), and, if otherwise admissible, may be offered without an accompanying witness for cross-examination."

We find the analysis in *Dukes* to be sound and hold that to be our position absent alternative direction from the Kansas Supreme Court. See *Dukes*, 290 Kan. at 488-89 (issue not preserved). Johnson encourages us to grant his claim based on the recent United States Supreme Court decision in *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 174 L. Ed. 2d 314, 129 S. Ct. 2527 (2009). We do not find the facts in *Melendez-Diaz* to be comparable, where the evidence there was a certificate of a state laboratory analysis stating that drugs seized by the police were cocaine of a certain quantity. That dealt with an element of the crime and not just the certification of a machine.

Affirmed.