NOT DESIGNATED FOR PUBLICATION

No. 123,540

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISTOPHER FULLMER,
*Appellant*.


MEMORANDUM OPINION

Appeal from Ellis District Court; BLAKE A. BITTEL, judge. Opinion filed September 9, 2022.
Affirmed.

*Michael S. Holland II*, of Holland and Holland, of Russell, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for
appellee.


Before GREEN, P.J., ISHERWOOD and COBLE, JJ.


PER CURIAM: While on routine patrol, Hays Police Officer Scott Heimann witnessed an individual driving erratically, so he executed a traffic stop. Upon making contact with the driver, Christopher Fullmer, it became clear the situation demanded a DUI investigation. Officer Heimann followed protocol, which included, among other things, a Horizontal Gaze Nystagmus (HGN) test. Fullmer refused to take a breathalyzer test so Heimann prepared the paperwork to pursue a warrant for a blood draw. The probable cause affidavit he submitted in support of that request included Fullmer's negative results on the HGN amongst several other indicators of intoxication. The district

1

court signed off on the warrant and Fullmer's sample reflected a BAC in excess of the legal limit. The State charged Fullmer with DUI, and in response, Fullmer moved to suppress his blood test results and secure a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). Fullmer argued that inclusion of his HGN test results in the affidavit and application for the search warrant resulted in a warrant grounded in inadmissible information. The district court denied Fullmer's motion to suppress, as well as his request for a *Franks* hearing, and convicted him of DUI following a bench trial on stipulated facts. Fullmer now brings the matter before us to tease out whether the district court erred in denying his pretrial motion to suppress and request for a *Franks* hearing. Finding no error, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Hays Police Officer Scott Heimann was on routine patrol during the early morning hours when he observed the driver of a GMC Sierra pickup truck consistently weaving in his lane. Heimann executed a traffic stop and identified the driver as Christopher Fullmer. In speaking with Fullmer, the officer immediately noticed his bloodshot, watery eyes and detected a strong odor of alcohol. Officer Heimann requested to see Fullmer's proof of insurance, and through a series of slow, deliberate movements Fullmer presented the officer with his vehicle registration instead. When Heimann inquired how much Fullmer had to drink he acknowledged consumption of "a couple of beers."

The officer requested that Fullmer step from the vehicle and perform a series of Standardized Field Sobriety Tests (SFSTs). Fullmer's trek to the sidewalk was an unsteady one and was followed by his failure of the HGN, walk-and-turn, and one-leg stand tests. A preliminary breath test (PBT) placed Fullmer's blood alcohol content (BAC) at .198. Based on this collection of facts, Officer Heimann arrested Fullmer for driving under the influence (DUI).

At the jail, Officer Heimann asked Fullmer to take another breath test, but Fullmer refused twice. Thus, Heimann drafted an affidavit for a search warrant to draw Fullmer's blood. In support of his request, Heimann included the entirety of his observations during the stop, the results of the HGN and field sobriety tests, and Fullmer's PBT result. The district court granted the warrant and Fullmer's blood draw revealed a BAC of .206. The State charged Fullmer with driving under the influence.

Prior to trial, Fullmer moved to suppress the blood test results and requested a *Franks* hearing. He argued that Officer Heimann's inclusion of the HGN test results in the probable cause affidavit was impermissible and rendered the resultant warrant invalid because such results are not admissible for any purpose. The district court denied Fullmer's motion, found him guilty of DUI following a bench trial on stipulated facts, and sentenced him to serve 90 days in jail.

Fullmer timely brings the matter before us to resolve whether the district court erred in denying his motion to suppress.

ANALYSIS

THE INCLUSION OF THE HGN TEST RESULTS IN THE PROBABLE CAUSE AFFIDAVIT DID NOT RENDER THE WARRANT TO DRAW FULLMER'S BLOOD INVALID

On appeal, Fullmer revives his argument that the warrant authorizing his blood draw was invalid because it rested in part on his failed HGN test—the results of which are unreliable under *City of Wichita v. Molitor*, 301 Kan. 251, 264, 341 P.3d 1275 (2015). He reasons that because the HGN test is too unreliable to provide reasonable suspicion, it is equally too unreliable to justify a search warrant. The State argues the *Molitor* rule does not apply to search warrant applications.

In *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), the United States Supreme Court addressed a defendant's right to challenge the veracity of a search warrant. But to prevail on a challenge to a warrant under the principles articulated in *Franks*, a criminal defendant must prove law enforcement authorities employed deliberate falsehoods or a reckless disregard for the truth in order to obtain the warrant. *State v. Francis*, 282 Kan. 120, 128, 145 P.3d 48 (2006). When analyzing a district court's ruling on a motion to suppress, this court applies a bifurcated standard of review—the district court's factual findings are reviewed for substantial competent evidence and its legal conclusions are reviewed de novo. *State v. Neighbors*, 299 Kan. 234, 240, 328 P.3d 1081 (2014). When, as here, the material facts underlying a defendant's claim are not disputed, "the issue is a question of law over which an appellate court has unlimited review." *State v. Hachmeister*, 306 Kan. 630, 637, 395 P.3d 833 (2017).

The Fourth Amendment to the United States Constitution guarantees "the right of the people to be secure in their persons. . . . against unreasonable searches and seizures." U.S. Const. amend. IV. To secure that right, the Fourth Amendment also requires warrants based on probable cause be presented under oath to a judicial officer. *Illinois v. McArthur*, 531 U.S. 326, 330, 121 S. Ct. 946, 148 L. Ed. 2d 838 (2001). Any warrant must describe, with particularity, the places to be searched and the objects to be seized. *State v. Francis*, 282 Kan. 120, 126, 145 P.3d 48 (2006). Probable cause to search exists where the known facts warrant a person of reasonable prudence in the belief that evidence of a crime will be found. *Ornelas v. United States*, 517 U.S. 690, 696, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996). Because a search warrant requires an evidentiary foundation, law enforcement officers may not rely on conclusory assertions or opinions unmoored from specific factual representations. See *Illinois v. Gates*, 462 U.S. 213, 239, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983) ("An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause, and . . . wholly conclusory statement[s]. . . fail[] to meet this requirement.").

Fullmer objects to Officer Heimann's inclusion of his HGN test results among the factors outlined in his probable cause affidavit. The reliability of HGN tests were examined in *Molitor*, where a police officer relied only on such a test to establish the reasonable suspicion required to administer a PBT. On review, the Kansas Supreme Court labeled the test "scientifically unprove[n]" and, for that reason, held that a failed HGN test could not establish reasonable suspicion when considered in isolation. 301 Kan. at 264; see also *City of Junction City v. Franklin*, No. 121,120, 2020 WL 855471, at *4 (Kan. App. 2020) (unpublished opinion) (stating results of HGN test are inadmissible "for any reason"). Fullmer argues that a logical extension of *Molitor* is to reject as tainted any warrant applications which include HGN test results in their probable cause determination.

For its part, the State directs our attention to *State v. Henry*, 263 Kan. 118, 128, 947 P.2d 1020 (1997). In that case, Henry argued that polygraph test results should not have been included in a search warrant affidavit when such results were inadmissible at trial. The Kansas Supreme Court rejected that contention and instead found that "[w]hen deciding if the totality of the circumstances supports a finding of probable cause, inclusion of facts pertaining to a polygraph test will not invalidate the issuance of a search warrant." 263 Kan. at 128. The court reached a similar conclusion in *State v. Hicks*, 282 Kan. 599, 614, 147 P.3d 1076 (2006), where it held an affidavit for a search warrant may include hearsay evidence provided it is accompanied by sufficient affirmative allegations of fact as to an affiant's personal knowledge related to the matter at issue. And in *State v. Althaus*, 49 Kan. App. 2d 210, 224, 305 P.3d 716 (2013), a panel of this court acknowledged that the facts set forth in a search warrant application "need not be in a form admissible at trial—hearsay and other secondhand information may suffice, if the overall circumstances demonstrate reliability."

The validity of a warrant is not determined by nit-picking discrete portions of the application. Rather, the totality of the circumstances controls. That is, whether the issuing

judge had a "substantial basis" for determining probable cause existed. See *United States v. Brown*, No. 21-10010-JWB, 2022 WL 473984, at *4 (D. Kan. 2022) (citing *Gates*, 462 U.S. at 238-39). And when district courts analyze facts in an affidavit, they should weigh each factual assertion with the reliability of the source in mind. See, e.g., *Hicks*, 282 Kan. at 614 ("[A]mong the circumstances to be considered by the magistrate in determining whether probable cause exists to support a search warrant are the 'veracity' and the 'basis of knowledge' of any person providing hearsay information.").

Because the HGN was considered unreliable for the purpose analyzed in *Molitor*—a three-year-old opinion when the district court issued the warrant here—the district court arguably gave that factor only that measure of credence it was due. See *Chance v. State*, 195 Kan. 711, 715, 408 P.2d 677 (1965) ("[D]istrict judges, like other citizens, are presumed to know the law . . . ."). The presence of an unreliable test in the affidavit does not sully the entire affidavit. It simply demands reliable evidence in order to clear the probable cause threshold. That added evidence was present here in the form of Fullmer's impaired driving, physical manifestations of alcohol consumption, the strong odor of alcohol emanating from his person, admission that he consumed alcohol, delayed motor skills, and the failure of multiple field sobriety tests.

Probable cause is the reasonable belief that a specific crime has been committed and that the defendant committed the crime. *State v. Regelman*, 309 Kan. 52, 61, 430 P.3d 946 (2018). In *City of Dodge City v. Norton*, 262 Kan. 199, 936 P.2d 1356 (1997), Norton claimed an officer lacked probable cause to arrest him for driving under the influence because he allegedly based his conclusion solely on one failed SFST, the heel-to-toe test, even though Norton had a disabled leg. But the totality of the circumstances reflected additional evidence of impairment, including that: (1) he created a disturbance at a nearby trailer park; (2) he weaved in his lane and nearly struck construction barrels; (3) he told the arresting officer that he planned to drink that evening; (4) his eyes were bloodshot; and (5) the officer smelled alcohol on Norton's breath. The court found that a

6

comprehensive view of the evidence provided the officer the requisite probable cause to support an arrest for driving under the influence. 262 Kan. at 205.

*Campbell v. Kansas Dept. of Revenue*, 25 Kan. App. 2d 430, 962 P.2d 1150 (1998), is also instructive. In that case, Campbell also complained the arresting officer lacked probable cause to believe Campbell drove under the influence. But when reviewed in its entirety, the record reflected Campbell (1) was speeding at 1:10 a.m.; (2) smelled of alcohol; (3) admitted to drinking; and (4) had glazed and bloodshot eyes. A panel of this court found that this evidence, when taken together, was "more than sufficient to satisfy a reasonably prudent police officer that Campbell had been driving under the influence." 25 Kan. App. 2d at 431-32.

More recently, in *State v. Johnson*, 43 Kan. App. 2d 815, 233 P.3d 290 (2010), *aff'd* 297 Kan. 210, 301 P.3d 287 (2013), a panel examined a record that included evidence establishing that: (1) approached a DUI checkpoint erratically; (2) smelled like alcohol; (3) admitted to drinking; (4) had bloodshot and watery eyes; and (5) exhibited multiple indications of intoxication during two SFSTs. Johnson claimed a dashboard video revealed "little evidence to show he was impaired," but the panel rejected his argument finding instead that the officer had enough evidence to conclude "guilt was more than a mere possibility" and had probable cause to arrest him. 43 Kan. App. 2d at 823-24.

In this case, the degree of evidence available to Officer Heimann to support Fullmer's intoxication was akin to that found to be sufficient in *Norton*, *Campbell*, and *Johnson*. Again, Fullmer exhibited impaired driving, exuded a strong odor of alcohol, presented with bloodshot, watery eyes, labored under delayed motor skills, confused his vehicle registration for his insurance, admitted to drinking that evening, failed several SFSTs, and provided a preliminary breath sample that showed his BAC was .198—over twice the legal limit. Even with the HGN results excised, the evidence was more than

enough to afford Officer Heimann the requisite probable cause to believe Fullmer operated his vehicle while under the influence. The district court properly denied Fullmer's motion to suppress and request for a *Franks* hearing.

Affirmed.