NOT DESIGNATED FOR PUBLICATION

No. 125,224

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GARET LEON DINKEL,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ellis District Court; GLENN R. BRAUN, judge. Submitted without oral argument. Opinion filed November 22, 2023. Affirmed.

*Michael S. Holland II*, of Holland and Holland, of Russell, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before ATCHESON, P.J., MALONE and PICKERING, JJ.

PICKERING, J.:  After the State charged Garet Leon Dinkel with driving under the influence (DUI), Dinkel filed a pretrial motion to suppress his blood alcohol test results and secure a hearing under *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). The district court denied Dinkel's motion to suppress and his motion for a *Franks* hearing. Following a bench trial on stipulated facts, Dinkel was convicted of a DUI. Dinkel now appeals, claiming the district court erred in denying his pretrial motion to suppress and request for a *Franks* hearing. Finding no error by the district court, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

On August 18, 2019, around 12:22 a.m., Ellis County Sheriff's Deputy Andrew Powers observed a white GMC Sierra in a ditch during "a severe thunderstorm with torrential rain fall." As he approached the truck, he saw it try to "shift in and out of reverse multiple times," but the truck remained stuck. Powers approached the truck's driver, Dinkel, who told the deputy that his truck was stuck and he was attempting to get out of the ditch. Powers detected the odor of an alcoholic beverage coming from Dinkel and observed that Dinkel had bloodshot and watery eyes. At the scene, Powers arrested Dinkel for DUI and took him to the police station.

Once at the police station, Dinkel failed to answer whether he would consent to a breath alcohol test. Instead, Dinkel repeatedly asked for the probable cause that justified his arrest. Determining that Dinkel was refusing to consent to the breath alcohol test, the deputy applied for a blood draw search warrant.

In preparing the affidavit and application for the search warrant, the deputy indicated that he had observed Dinkel operating or attempting to operate a vehicle and that Dinkel admitted to operating or attempting to operate a vehicle. The deputy also observed that Dinkel had an odor of alcohol; had bloodshot, watery, or glazed eyes; had slurred speech; was swaying or unsteady or had balance problems; repeated questions or comments; and had difficulty following the deputy's directions. Dinkel also appeared to have constricted pupils. The deputy left the section regarding field sobriety tests blank. The box to suggest Dinkel refused to perform the tests was also not checked. The boxes indicating Dinkel refused to submit to a preliminary breath test (PBT) and refused an evidentiary breath test were checked.

Once the search warrant was issued, law enforcement had a blood draw performed on Dinkel. The blood test results indicated that Dinkel's blood alcohol content (BAC) was 0.26—over three times the legal limit.

The State charged Dinkel with DUI, third offense. In pretrial motions, Dinkel filed a motion and an amended motion to suppress the blood alcohol testing results and a motion for a *Franks* hearing. The affidavit in support of the *Franks* hearing alleged that the arresting officer "failed to include the information that the defendant did not refuse field sobriety testing, but testing was unable to be completed due to the thunderstorm and muddy conditions." It also alleged that Dinkel did not refuse to submit to a PBT.

In May 2021, the district court held a hearing on the filed motions. The parties agreed that the court should first determine if the warrant, without the alleged problems, contained probable cause. The district court noted that the warrant itself made it clear that no field sobriety tests were given. The district court found that there was no omission or intentional misrepresentation due to the lack of an explanation on why no field sobriety tests were performed. The district court then found sufficient facts existed to issue a warrant even if Dinkel did not refuse the PBT. It denied the motion for a full *Franks* hearing and denied Dinkel's amended motion to suppress.

The parties then entered into a stipulation of facts and a waiver of jury trial. The district court found Dinkel guilty of DUI, third offense. The court sentenced Dinkel to an underlying jail term of 12 months but granted Dinkel probation for 12 months after serving 48 hours in jail and 90 days on house arrest.

ANALYSIS

On appeal, Dinkel argues that based upon his allegations that the affidavit omitted relevant evidence and included false evidence, the district court was required, at a minimum, to conduct a *Franks* hearing before ruling on his motion to suppress.

In this type of case, the basis for our decision arises from the Fourth Amendment to the United States Constitution, which guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. To secure that right, the Fourth Amendment requires warrants based on probable cause be presented under oath to a judicial officer. Any warrant must describe, with particularity, the places to be searched and the objects to be seized. See *Illinois v. McArthur*, 531 U.S. 326, 330, 121 S. Ct. 946, 148 L. Ed. 2d 838 (2001). Probable cause to search exists where the known facts warrant a person of reasonable prudence in the belief that evidence of a crime will be found. *Ornelas v. United States*, 517 U.S. 690, 696, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996).

Because a search warrant requires an evidentiary foundation, law enforcement officers may not rely on conclusory assertions or opinions unmoored from specific factual representations. See *Illinois v. Gates*, 462 U.S. 213, 239, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983) ("An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause, and . . . wholly conclusory statement[s] . . . [fail] to meet this requirement."). Judges should not consider allegations lacking factual support in measuring probable cause to issue a search warrant. *State v. Hicks*, 282 Kan. 599, 615-16, 147 P.3d 1076 (2006).

In most cases, the facts within the affidavit may not be disputed by the party against whom the warrant is directed. See *Franks*, 438 U.S. at 171. In *Franks*, the United States Supreme Court addressed a defendant's right to challenge the veracity of a search

warrant and found such challenge could be made. The *Frank*s Court noted that appellate courts generally presume the validity of an affidavit in support of a search warrant. Consequently, to prevail on a challenge to a warrant under the principles articulated in *Franks*, a criminal defendant must prove law enforcement authorities employed deliberate falsehoods or a reckless disregard for the truth to obtain the warrant. 438 U.S. at 171; *State v. Francis*, 282 Kan. 120, 128-29, 145 P.3d 48 (2006).

Our Supreme Court considered the parameters for holding a *Franks* hearing in *State v. Adam*s, 294 Kan. 171, Syl. ¶¶ 1-4, 273 P.3d 718 (2012). In *Adams*, the court explained that the trial court does not automatically hold a *Franks* hearing. Rather, a defendant who challenges the reliability of a search warrant's accompanying affidavit may be entitled to an evidentiary hearing if he or she submits a sworn affidavit that "(1) contains statements that are material to the issuance of the search warrant because the statements were necessary to find probable cause and (2) the material statements (a) were a deliberate falsehood, (b) were made in reckless disregard for the truth, or (c) deliberately omitted a material fact." *Adams*, 294 Kan. at 179. In other words, to mandate a hearing under *Franks*, a defendant must show that the affidavit submitted in support of search warrant was unreliable.

Under this process, should the defendant satisfy the prima facie showing of the affidavit's lack of veracity, the trial court must remove the questionable portion of the affidavit and determine whether the remaining affidavit contains sufficient evidence of probable cause. If, however, the court finds probable cause despite the removal of the statements, the trial court does not need to hold an evidentiary hearing under *Franks*. If the trial court does not find probable cause without the excised portion of the affidavit, the trial court should hold a *Franks* evidentiary hearing. *Adams*, 294 Kan. 171, Syl. ¶¶ 2-3. As noted by the *Adams* court, at the evidentiary hearing, the defendant would be allowed to prove that the affidavit included deliberately omitted material facts and that

the affiant "deliberately made a false statement, or made a statement with reckless disregard for the truth." 294 Kan. at 179.

The standard of review for issues challenging the denial of a *Franks* hearing "is the same as any case in which we review a trial court's determination regarding whether undisputed facts establish probable cause for a search warrant." *Adams*, 294 Kan. at 180. When analyzing a district court's ruling on whether an affidavit in support of an application for search warrant is sufficient, our task "'is to ensure that the issuing magistrate had a substantial basis for concluding probable cause existed. . . . [T]he standard translates to whether the affidavit provided a substantial basis for the magistrate's determination that there is a fair probability that evidence will be found in the place to be searched.'" 294 Kan. at 180.

Here, in the affidavit attached to his motion for *Franks* hearing, Dinkel alleged that field sobriety testing was not offered because of the muddy conditions and the deputy should have included that fact in his affidavit for search warrant. Dinkel also alleged that the deputy recklessly indicated that Dinkel refused a PBT. On appeal, Dinkel claims that making these two allegations was enough to require the district court to conduct an evidentiary *Franks* hearing to determine whether a *Franks* violation occurred.

Yet as the State points out, *Adams* unquestionably refutes his argument. A hearing is not required if "the remaining portions of the affidavit provide sufficient evidence of probable cause." 294 Kan. at 179. As noted earlier: "'Probable cause is the reasonable belief that a specific crime has been committed and that the defendant committed the crime.'" *State v. Regelman*, 309 Kan. 52, 61, 430 P.3d 946 (2018). Because the warrant contained sufficient evidence of probable cause without the extracted statements, no *Franks* hearing was required.

6

Additionally, the evidence available to the deputy to support Dinkel's intoxication was like that found to be sufficient in *State v. Fullmer*, No. 123,540, 2022 WL 4112688 (Kan. App. 2022) (unpublished opinion). In that case, Fullmer claimed an officer lacked probable cause for a search warrant because he included results of the horizontal gaze nystagmus (HGN) test in the affidavit. The panel determined: "The validity of a warrant is not determined by nit-picking discrete portions of the application. Rather, the totality of the circumstances controls. That is, whether the issuing judge had a 'substantial basis' for determining probable cause existed." 2022 WL 4112688, at *3. Even when removing the contested HGN results from consideration, the *Fullmer* panel found probable cause to believe Fullmer was driving under the influence. Specifically, the panel pointed to the following facts:

> "Fullmer exhibited impaired driving, exuded a strong odor of alcohol, presented with bloodshot, watery eyes, labored under delayed motor skills, confused his vehicle registration for his insurance, admitted to drinking that evening, failed several [standardized field sobriety tests], and provided a preliminary breath sample that showed his BAC was .198." 2022 WL 4112688, at *4.

See also *City of Dodge City v. Norton*, 262 Kan. 199, 205, 936 P.2d 1356 (1997) (finding probable cause of intoxication when defendant created disturbance, weaved in his lane, nearly struck construction barrels, told officer he planned to drink that evening, had bloodshot eyes, and had alcohol on his breath); *State v. Johnson*, 43 Kan. App. 2d 815, 823-24, 233 P.3d 290 (2010) (finding probable cause of intoxication when defendant approached DUI checkpoint erratically, smelled like alcohol, admitted to drinking, had bloodshot and watery eyes, and failed two standardized field sobriety tests); *Campbell v. Kansas Dept. of Revenue*, 25 Kan. App. 2d 430, 431-32, 962 P.2d 1150 (1998) (finding probable cause of intoxication when defendant was speeding at 1:10 a.m., smelled like liquor, admitted to drinking, and had glazed and bloodshot eyes).

In this case, the district court specifically found that Dinkel had an odor of alcohol and was slow to respond to the officer's questions. Dinkel was also swaying, unsteady, and had balance problems. His eyes appeared glazed, bloodshot, and watery. He also repeated questions and comments, slurred his speech, and struggled to get out of his vehicle. Finally, he had difficulty following Powers' directions. Even after excising the portions of the affidavit that Dinkel alleges were problematic, the evidence was more than enough to afford the deputy the requisite probable cause to believe Dinkel operated his vehicle while under the influence.

The district court properly denied Dinkel's motion to suppress and his request for a *Franks* hearing.

Affirmed.